Adopted December 16, 1890.

---

## Taylor, Bastrop & Houston Railway Company v. M. V. Taylor.

### No. 6750.

1.   **General Demurrer.**—In an action for actual and exemplary damages, the count for actual damages being good, a defective statement of the cause of action for exemplary damages can not be reached by general demurrer.

2.   **Condition of Railway Track.**—It is competent in an action for damages caused by a railway wreck to prove the condition of the track immediately before and at the time of the wreck at other places than where the wreck occurred.

3.   **Risk Assumed by Railway Employe.**—A railway employe does not assume risks in a road bed or track when passing upon a train to his work which rendered his employment more hazardous than is reasonable.   It is the duty of the railway company to keep its road in a reasonably safe condition, and the employe has the right to assume that a part of the road he by his employment is not called upon to inspect or repair is in such condition   See charges applying this.

4.   **Same.**—The rule is that if the employe knows of the defects which cause injury to him he assumes the risk, but he is not bound to exercise care in knowing the fact unless it is in the line of his duty.

5.   **Negligence — Charge.** — It was proper to charge the jury that if the railway company permitted its road bed, track, and bridges, or either of them, to become so defective and out of repair as to render the operation of its trains over the same more dangerous to its employes than was reasonable and proper, this would be negligence on the part of the defendant.

6.   **Same.** — Had the court instructed the jury that if the defendant had permitted its road bed and track to become unreasonably dangerous to its employes, etc., plaintiff should recover, without saying anything about negligence, it would have been correct.

7.   **Charge.**—Where the verdict found only actual damages an error touching exemplary damages would be harmless.

8.   **Contributory Negligence.** — The charge "that in riding on the train of the

defendant it was the duty of the deceased to conduct himself as a man of ordinary prudence and care would have done under the circumstances in which he was, and if he failed to use such ordinary care, and by so doing brought about or contributed to his own death, he would be guilty of contributory negligence," supplemented by telling the jury that "if the deceased was guilty of contributory negligence the plaintiff could not recover," approved.

9.   Charge.—It was not error to refuse to instruct the jury that plaintiff could not recover unless the deceased, if living, could recover. While this is a statutory provision, all that is necessary is to charge the law of the case.

10.   Charge.—Where the issues upon the facts are clearly submitted to the jury, and there is no defect in the proof of the plaintiff's case, it would be improper to charge that the burden of proof was upon the plaintiff to establish negligence on part of the defendant.

11.   Charge—Practice.—It is proper to refuse a charge which merely reiterates a principle contained in the general charge, or which in its terms requires explanation. See example.

12.   Care to Prevent Injury.—Where an employe was killed in a railway wreck, and the testimony was undisputed that employes in passing along the road to their work on construction trains rode where they pleased, in the caboose or on the flat cars, the general charge of the court upon contributory negligence being full, it was not error to refuse to further charge the jury that the absence of any rule on part of the defendant company prohibiting the riding upon the flat cars did not absolve the employes from taking proper care for their safety.

APPEAL from Williamson.   Tried below before Hon. John C. Townes.

This is a suit by Mrs. M. V. Taylor against the Taylor, Bastrop & Houston Railway Company to recover damages, actual and exemplary, for personal injuries inflicted upon and resulting in the death of her husband, W. S. Taylor, while in the employ of the defendant as a section foreman, through its alleged negligence.

Defenses were general demurrer and general denial, and a special answer setting up the defenses of contributory negligence and fellow servant.

Trial before court and jury, resulting in a verdict and judgment for $5000 actual damages and costs.   The defendant appealed.

*S. R. Fisher*, for appellant.— 1.   The court erred in overruling defendant's general demurrer to plaintiff's original petition, and in particular to such parts thereof as claimed exemplary damages.

2.   The court erred in permitting plaintiff to introduce evidence tending to show the condition, immediately before and at the time of the wreck in which plaintiff's husband was injured, of defendant's track, road bed, etc., at places other than the place where the wreck occurred.

3.   The court erred in its charge to the jury in failing to define the terms negligence, gross negligence, and contributory negligence.   Railway v. Murphy, 46 Texas, 369; Railway v. Jones, 95 U. S., 441; Pierce on Rys., 310; Cotton Press v. Bradley, 52 Texas, 600.

4.   [See opinion.]   Servant assumes usual and ordinary risks incident to the service, and must exercise ordinary care to inform himself of such

risks and probable danger. Railway v. Drew, 59 Texas, 11, 12; Railway v. Bradford, 66 Texas, 732; 59 Texas, 22, 23; Railway v. Conrad, 62 Texas, 628, 629; 51 Mich., 258, 259.

Knowledge or means of knowledge of danger defeats recovery. Railway v. Drew, 59 Texas, 11, 12; Railway v. Bradford, 66 Texas, 732; 25 Cent. Law Jour., 372, *et seq.;* 28 Am. and Eng. Ry. Cases, 494.

Error to assume existence of material facts. Railway v. Christman, 65 Texas, 369; Railway v. Davidson, 61 Texas, 204.

5. Negligence is a question of fact for the jury, not of law for the court. Railway v. Hill, 71 Texas, 451; Railway v. Gasscamp, 69 Texas, 547; Brown v. Sullivan, 71 Texas, 470; Markham v. Nav. Co., 73 Texas, 247; Railway v. Moore, 69 Texas, 157; 60 Texas, 143; 59 Texas, 675.

6. The court erred in instructing the jury in effect that in riding on trains of the defendant it was the duty of the deceased to conduct himself as a man of ordinary prudence and care would have done under the circumstances in which he was, and if he failed to use such ordinary care, and by so doing brought about or contributed to his own death, he would be guilty of contributory negligence, because the instruction is an incorrect statement of the law.

7. The court erred in instructing the jury that exemplary damages might be awarded, and in refusing to give in charge to the jury special instructions requested by the defendant, wherein they were instructed not to consider the question of exemplary damages. Railway v. Johnson, 72 Texas, 95; Railway v. Shuford, 72 Texas, 165.

8. The court erred in refusing to give in charge to the jury special instructions asked by the defendant, because the plaintiff in this case was not entitled to recover if the deceased, for whose death damages are sought, could not if living and suing in his own behalf have recovered. Rev. Stats., art. 2900; Railway v. Berry, 67 Texas, 239.

9. The court erred in refusing to give in charge to the jury special instructions asked by the defendant, because said instructions contain the correct rule as to the burden of proof where an employe seeks to recover damages of the master, and because the jury were advised therein of the existence of the presumption of due care on the part of the master until the fact of negligence on the master's part should be affirmatively shown.

Burden on servant to show due care on his part and negligence on part of master. Railway v. Crowder, 63 Texas, 502; Christman v. Railway, 65 Texas, 369; Railway v. Bradford, 66 Texas, 735; Wood on Mast. and Serv., secs. 346, 368, 382.

Presumption that master has exercised proper care for safety of servant. Wood on Mast. and Serv., secs. 346, 368; 32 Vt., 473.

10. The court erred in refusing to give in charge to the jury special instructions asked by the defendant, because said instructions advised the jury as to the effect knowledge or means of knowledge on the part of a

servant of defects in track, road bed, etc., would have on his right to recover against the master.   Railway v. Drew, 59 Texas, 10; 59 Texas, 22, 23; Hathaway v. Railway, 51 Mich., 254; 28 Am. and Eng. Ry. Cases, 491, 494; 25 Cent. Law Jour., 372.

*Cochran & Parker*, for appellee.— 1.   The petition states a good cause of action for both actual and exemplary damages, and the court did not err in overruling defendant's general demurrer thereto.   The count for actual damages is clearly good.   Railway v. Brinker, 68 Texas, 502; Railway v. Broussard, 69 Texas, 622; Rowland v. Murphy, 66 Texas, 536, 537; Green & Say. Plead. and Pr., secs. 730, 731; Bliss on Code Plead., sec. 211; Neier v. Railway, 1 S. W. Rep., 390.

On exemplary damages..   Railway v. Garcia, 70 Texas, 208; Hays v. Railway, 46 Texas, 272; Railway v. Shuford, 72 Texas, 165; Railway v. Mitchell, 72 Texas, 171; Railway v. Johnson, 72 Texas, 95.

2.   The terms "negligence," "gross negligence," and "contributory negligence" are not definable in the abstract, and all that is required is that the law of these terms be applied to the facts of the particular case, as was done in this action.   Railway v. Shuford, 72 Texas, 165; Railway v. Ormond, 64 Texas, 489; Steamboat v. King, 16 How., 469–479, and cases cited; Lemp v. Railway, 64 Am. Dec., 763; Railway v. Spearen, 86 Am. Dec., 544.

3.   On the charge of the court not assuming defects.   Railway v. Hardin, 62 Texas, 373, 374.

On right of employe to rely on railway company furnishing safe road bed and track.   Railway v. McNamara, 59 Texas, 257, 258; Railway v. Lempe, 59 Texas, 22, 23; Wood's Mast. and Serv., p. 678; Id., sec. 336.

On burden of proof being on defendant.   Railway v. Redeker, 67 Texas, 187; Railway v. Spicker, 61 Texas, 427; Shearm. & Redf. on Neg., sec. 13.

4.   The paragraph of the charge complained of in the seventh assignment [see opinion] is a correct statement of the law applicable to the pleadings and the evidence, and does not invade the province of the jury as claimed, for the whole question as to the condition of the road is left to the finding of the jury.   Railway v. Smith, 65 Texas, 170, 171; Railway v. Crowder, 70 Texas, 224, 225; Railway v. De Milley, 60 Texas, 194; Railway v. Silliphant, 70 Texas, 630; Railway v. Hardin, 62 Texas, 367.

On negligence *per se* and right of court to so declare it as matter of law.   Railway v. Gasscamp, 69 Texas, 547; Chatham v. Jones, 69 Texas, 746; Cool. on Torts, 670; Whitt. Smith on Neg., 40; Railway v. Ogier, 78 Am. Dec., 324; Railway v. Wright, 17 S. E. Rep., 586; Railway v. Smith, 65 Texas, 171; Railway v. Mallon, 65 Texas, 117.

Cases may arise where the question of negligence would be one of law. Railway v. Greenlee, 70 Texas, 562; Railway v. Moore, 69 Texas, 160; Rowland v. Murphy, 66 Texas, 536; Railway v. Levy & Bro., 59 Texas, 677, 678.

Negligence in this case is one of mixed law and fact. Railway v. Ormond, 64 Texas, 489; Whitt. Smith on Neg., 40; Norris v. Litchfield, 35 N. H., 271; Lemp v. Railway, 64 Am. Dec., 763; 2 Thomp. on Neg., 1236, sec. 11, and cases cited.

The facts in this case being uncontroverted, or if controverted then by only a scintilla of evidence, the question of negligence was one of law. Whitt. Smith on Neg., 40; Shearm. & Redf. on Neg., sec. 11, p. 14; 2 Thomp. on Neg., 1237; Butterfield v. Railway, 87 Am. Dec., 680.

6.    But if the court should be of the opinion that the court below erred in the said paragraph, or any other paragraph of its charge, then this court must hold such error not to be reversible error, because, in view of the pleadings and the facts of the case, no other verdict than the one rendered could have been justly or legally rendered. Railway v. Delahunty, 53 Texas, 210–212; Bowles v. Brice, 66 Texas, 731; Houston County v. Dwyer, 59 Texas, 114; Galveston v. Morton, 58 Texas, 416; Gaston & Thomas v. Dashiell, 55 Texas, 520; Hubby v. Stokes, 22 Texas, 221; Mercer v. Hall, 2 Texas, 287; Fisk v. Wilson, 15 Texas, 430; Loper v. Robinson, 54 Texas, 515, 516.

On burden of proof to show contributory negligence being on defendant. Railway v. Redeker, 67 Texas, 188; Railway v. Spicker, 61 Texas, 429; Brown v. Sullivan, 71 Texas, 470; Railway v. Watson, 72 Texas, 631.

COLLARD, JUDGE.— This suit was brought by Mrs. M. V. Taylor against the appellant railway company for actual and exemplary damages because of injuries to her husband, resulting in his death, while riding on defendant's work train, he being at the time an employe of defendant as a section foreman. He was section foreman of section No. 2. He received his injuries on section No. 5, which was in charge of section foreman Pierce.

On the morning of the 28th of March, 1888, defendant started its work train from Taylor south towards Bastrop, picking up the bosses of the various sections and their hands, intending to take them to a gravel pit between Sayers and Bastrop, there to load the cars with gravel for use of the road.    The train was composed of an engine, tender, twelve flat cars, and a caboose.    By the time the train had reached Cedar Hollow, on section No. 5, where the accident occurred, some twenty or twenty-five men had been taken aboard the train.    There was evidence showing that the caboose was crowded, and some of the men rode on the flat cars, of which there were twelve in the train.    It was more dangerous to ride on the flat cars than in the caboose.    It was customary for the men to ride on the flat cars whenever they pleased, and the custom was known to the company.    There was no order prohibiting such practice.    Taylor rode awhile in the caboose, then moved on to a flat car near the caboose, and then to the third car from the engine.    The track was in bad condition in many

places.   There were several defective places near the north end of a bridge across Cedar Hollow.  Right at the bridge there was a rise on the north side, so that the engine and cars south had to mount the rise to get on a level with the bridge.   North of this there were uneven places in the track, caused by the rails and ties sinking down into the road bed as the engine and cars passed over.   Thirty feet north of the bridge was the first sunken rail, at the first joint north of the bridge.   It was the practice of old engineers, who were familiar with the road and acquainted with the bad places, to reduce the speed of the train to about nine miles an hour in passing over these uneven places.   It was dangerous to run over them at a speed of twelve or fifteen miles per hour.   When the trains were slowed up to a speed of not more than nine miles an hour there was no danger at the bridge.   There was no danger when an old engineer had charge of the engine and used such caution; the danger was when a new engineer might be running over it.

This place had been in bad order about a month before the wreck.   The road master had had his attention called to it by Engineer Garrett, who slowed up his train in passing over it, and the road master said he would order it repaired, and he did order Pierce, the section foreman, to repair it.   Pierce did repair a place sixty feet from the end of the bridge, supposing that was the place to be fixed, but he said it was level nearer the bridge and needed no repairs.   The place he did fix he said he did not fix perfectly.   A top-heavy engine running over the place would roll and careen to one side.   The work train with the hands aboard, as before stated, was running over this part of the road, a new engineer to this part of the road in charge of the engine, and a few feet before reaching the north end of the bridge the engine or tender ran off of the track on the right side, not far from where the sink was; the caps of the bridge were struck and the bridge went down, drawing several flat cars into the chasm. The train at the time was running twelve or fifteen miles an hour; not more than schedule time.   Taylor was seriously hurt in the wreck, and a few days thereafter died of his injuries.   Some of the witnesses say the cause of the wreck was a loose joint in the track north of the bridge that would sink when the engine was on it and spring back level when the weight passed over it.   It had in this way sunk the road bed at the point and rendered it dangerous.   It was in proof by one witness that the sunken place ran up close to the bridge, within twelve or fifteen feet.

One of the defendant's engineers, yet in the employ of the defendant, testified concerning the low joint north of the bridge, on the right hand side going south, and said he had called the attention of Johnson, the road master, to it twice, and at one time slowed over it and told him to watch it; that he had called Pierce's attention to it three days before the wreck. Johnson promised to have it fixed, and did throw off a note to Pierce ordering him to fix it.   He says:  "Before I was told where the wreck

occurred I told my conductor that I knew the spot where it had occurred. I knew the place because of my knowledge of its defective condition there."

It was in proof that Taylor had been on the train and had passed over that part of the track the day before, and possibly oftener, but it was not on his section. Many others who had passed over the place said that they had not noticed any defect in the track at the point, and several who had been over it frequently. The conductor in charge of the train had been over it three or four times, but had not noticed anything wrong there. There was much evidence tending to show that the road was in passable condition—that is, in ordinary repair.

Albrough, another section foreman, who with his men was taken on the work train that morning, testified that he saw Taylor on the train. He says: "When I first got on the train I took my place in the caboose, and remained in there for an hour or so, but I got out on to a flat car at Coupland and stayed out until the wreck. I was on the third car from the engine. Taylor was on the car with me, as was another man I did not know. Taylor was on the second car from the caboose when I met him, and he went to the third from the engine, on which I was riding. He had been with me on that car about twenty minutes, and was on that car at the time of the accident. * * * At the time of the wreck I first saw the tender jump the track, and by that time Taylor got ready to jump, and he jumped and struck the cap of the bridge, and that was the last I saw of him. I slid across the bridge on the flat without any trucks under it until it got over the bridge, and I do not know whether I jumped or walked off. The flat I was on scooted over the opening. I told Taylor not to jump. I told him because the first two cars were in the direction he was going to jump and I was afraid he would be caught in the wreck of the cars. I was not hurt. The caboose did not go off the track. * * * The day before, when I rode over it, it seemed to be in fair condition, but there might have been a swing in it; I could not tell. * * * In my judgment that track, for a new road bed, along there for about twelve miles was in good condition. All new road beds sink more or less. All new road beds do not stay sunk; they are supposed to be kept up. When a place gets out of order a man can fix it up in a day, but how long it will stay is another thing."

Perrin, the engineer in charge of the engine at the time of the accident, testified when first on the stand that the speed of the train at the time and place of the wreck "was about twelve miles an hour; it might have been a mile or two faster or a mile slower; that is about the speed." He said he "was on track that he was allowed to make fifteen miles an hour on."

He was afterwards recalled and testified that he could not state the speed of the train as he passed over the place on the day before the accident, but says, "I was going about as fast as I thought it was safe. I

guess it may have been twenty or twenty-five miles an hour at the point between the gravel pit and Elgin."

Avery testified that he took a load of gravel over the place the day before the wreck, going twenty-five or thirty miles an hour, but then he was going north, with engine and pilot in front.

Other particulars of the case will be stated hereafter if required.

The jury gave verdict for plaintiff for $5000 actual damages. Judgment was rendered accordingly, and defendant appealed.

The first assignment of error is that the court erred in overruling defendant's general demurrer to plaintiff's original petition, and in particular to such parts thereof as claimed exemplary damages.

There is no question but that the petition was sufficient in law for a recovery of actual damages, and had it been defective in the claim for exemplary damages the defect could not be reached by a general demurrer.

The next assignment is that the court erred in permitting plaintiff to introduce evidence tending to show the condition of the track and road bed immediately before and at the time of the wreck at places other than where the wreck occurred.

This question has been decided adversely to appellant in Railway v. De Milley, 60 Texas, 194. The point is elaborated in that case, and needs no further discussion.

The next assignment of error presented in appellant's brief is that the court erred in its charge to the jury in failing to define the terms negligence, gross negligence, and contributory negligence.

The court did not attempt to give any abstract definitions of these terms, but stated the law of negligence in the charge as applied to the facts of the case, which was all that was required.

The appellant further objects to the charge of the court as follows:

"The court erred in paragraph 7 of its charge to the jury, in instructing the jury 'That the deceased, Taylor, in accepting employment with the defendant company, assumed the risks incidental to travel over the road while it was in a reasonably safe condition, and that he did not assume risks which grew out of any defect in the road which rendered it more hazardous than reasonable, unless Taylor had knowledge of the defects occasioning the extra hazard;' (1) because said instruction does not correctly state the risks assumed by an employe in railroad service; (2) because it is a charge upon the weight of evidence, in assuming the existence of defects in the road; and (3) because it made the defendant company's liability for injuries resulting from defects in track, road bed, etc., depend solely upon the absence of knowledge of such defects on Taylor's part, without reference to the further inquiry whether by the exercise of reasonable care and prudence Taylor might not have discovered defects exposing him to danger."

The court instructed the jury upon this subject as follows:

"6.   It is the duty of the defendant to keep its road bed, track, and bridges in such condition as to be reasonably safe to its employes in operating its trains over same at a reasonable and proper rate of speed.

"7.   In accepting employment from the defendant the said W. S. Taylor accepted the risks incident to travel over the road while it was in the condition above indicated, and he did not accept risks which grew out of any defects in the road which rendered it more hazardous than reasonable, unless he had knowledge of the defects occasioning the extra hazard.

"8.   If the defendant permitted its road bed, track, and bridges, or either of them, to become so defective and out of repair as to render the operation of its trains over the same more dangerous to its employes than it was reasonable and proper for it to be, this would be negligence on the part of defendant."

The seventh paragraph of the charge only states facts upon which deceased would and would not be held to assume risks, and did not assume that defects existed, nor was it a charge upon the weight of evidence. Paragraph 8 of the charge, immediately after the section complained of, properly submits the question of defective condition of the road to the jury.   The jury were also told in the fourteenth clause of the charge that if the wreck was not caused by defects in the road bed, track, or bridge, they should find for defendant.   Railway v. Hardin, 62 Texas, 373.

Deceased did not assume risks from defects in the road bed or track which rendered his employment more hazardous than was reasonable.  It was the duty of the company to keep its road in a reasonably safe condition, and deceased had the right to assume that a part of the road which he was not required to inspect or repair was in such condition.   The charge in this respect was the law of the case.   Railway v. Bell, 75 Texas, 50.

If deceased knew of the defect that caused the injury he would, as an employe of defendant, be held to have assumed the risk occasioned thereby, but he was not bound to use care in ascertaining the fact on that part of the road where the accident occurred.   It did not occur on the section of the road of which he was foreman, where it was his duty to inspect and repair the road, but on another part.   He was being carried by defendant's train on other employment in no wise connected with his duties as section foreman over the road where he owed no duty as inspector. The rule is that if the employe knows of defects which cause injury to him he assumes the risk, but he is not bound to exercise care in knowing the fact unless it is in the line of his duty.   The principle contended for by appellant does not apply to a case like this.   Railway v. McNamara, 59 Texas, 255.

Appellant's next assignment of error is:

" The court erred in paragraph 8 of its charge to the jury in charging, in effect, that if the defendant permitted its road bed, track, and bridges,

or either of them, to become so defective and out of repair as to render the operation of its trains over the same more dangerous to its employes than was reasonable and proper, this would be negligence on the part of defendant, because whether the facts enumerated constituted negligence or not was a question of fact for the jury to determine."

A similar charge to the above was held to be a correct exposition of the law. Railway v. Silliphant, 70 Texas, 630, 631.

The foregoing charge does not tell the jury that any certain act, or the omission of any certain act, would constitute negligence. It correctly states the elements of negligence as applied to the facts of the case, which elements, if found by the jury, would be a finding of negligence.

The question of negligence *vel non* must, as a general rule, be left to the jury, but the court is not compelled to use any particular set phrases to communicate to the jury what is meant by it. If the law of negligence in a given case is correctly stated it is sufficient. The law was correctly declared in the charge complained of. Had the court instructed the jury that if the defendant had permitted its road bed and track to become unreasonably dangerous to its employes, etc., plaintiff should recover, without saying anything about negligence, it would have been correct. Railway v. Bell, 75 Texas, 50.

The next assignment of error complains of supposed error in the court's charge concerning exemplary damages. The jury found for the defendant upon the issue. If there was error in the charge it was harmless.

It is urged that "the court erred in paragraph 10 of its charge to the jury in instructing the jury, in effect, 'That in riding on trains of the defendant it was the duty of the deceased to conduct himself as a man of ordinary prudence and care would have done under the circumstances in which he was, and if he failed to use such ordinary care, and by so doing brought about or contributed to his own death, he would be guilty of contributory negligence,' because the instruction is an incorrect statement of the law."

We find nothing erroneous in this charge. It is the law. The court supplemented the charge by telling the jury that if the deceased was guilty of contributory negligence plaintiff could not recover. Such instructions were eminently proper under the issue of contributory negligence.

The next assignment supposes error in the court's charge upon exemplary damages and refusal to give charges asked upon the subject, which, for reasons before stated, need not be considered.

The next assignment of error is that the court erred in refusing special instructions 1 and 2 asked by defendant, to the effect that plaintiff could not recover unless the deceased, if living, could recover.

This is a statutory provision, but it is unnecessary to give it in charge to the jury. All that is necessary is to charge the law of the case. The

requested instruction No. 1 simply announced the rule that plaintiff could not recover if deceased could not if living and suing for himself; the second was a reiteration of the first, and contained some other additional matters, among which was the following: That in order to a recovery by the plaintiff she must show "that Taylor did not know and had not equal means of knowing the danger to which he was exposed in going over the track on the train." We have already seen that this charge should not have been given, as deceased was under no obligations to the company to know the condition of the track where the wreck occurred, and hence, although some part of the charge might have been correct, it could not be given because of the error in the clause of the requested. charge quoted.

Defendant requested special charges instructing the jury that the burden of proof was on the plaintiff to establish negligence on the part of defendant, and that until this fact is established the law presumes that the defendant exercised proper care for Taylor's safety. There was no defect in the proof of plaintiff, and nothing in the case calling for a charge upon the burden of proof. The issues upon the facts were clearly submitted to the jury, and it would have been improper to charge that the burden of proof was upon the plaintiff to establish negligence; nor was it necessary to instruct the jury that it would be presumed that defendant had exercised proper care until the contrary appeared.

Defendant also asked the court to instruct the jury that the law only imposes upon the defendant the duty to exercise reasonable and ordinary care to provide safe road bed, track, and bridges for an employe in its service, and that if it had done so plaintiff could not recover.

The court in the general charge had instructed the jury that it was the duty of defendant to keep its road bed, track, and bridges in such condition as to be reasonably safe to its employes in operating its trains over the same at a reasonable and proper rate of speed, and that deceased did not assume risks which grew out of defects in the road which rendered it more hazardous than reasonable unless he had knowledge of the defects occasioning. the extra hazard. This charge given informed the jury as to the care required of the company; that it was to keep its road, track, etc., in reasonably safe condition. These expressions are equivalent to a direction that the company was only bound to use ordinary care. The charge asked does not define ordinary care, and does not call the attention of the court to the necessity of such a definition. It did not cure any defect that may have been in the court's charge in this respect.

Another assignment of error is, "The court erred in refusing to give in charge to the jury special instructions Nos. 9 and 10 asked by defendant, because the mere absence of a rule or regulation prohibiting employes of a railroad company from doing acts or indulging in practices which are not necessary or required to be done in the prosecution of their employment and which may be dangerous to their safety, will not relieve an em-

ploye from the consequences of his own act where injury results therefrom, nor impose upon the company a liability which otherwise it would not rest under."

Defendant requested the following to be given in charge to the jury:

" No. 9.  You are instructed that the mere absence of a rule or regulation prohibiting employes of a railroad company from doing acts or indulging in practices which are not necessary or required to be done in the prosecution of their employment and which may be dangerous to their safety, will not relieve an employe from the consequences of his own acts where injury results therefrom, nor impose upon the company a liability which otherwise it would not rest under.   If, therefore, you believe from the evidence that riding upon a flat car in a work train when a caboose is provided was not prohibited by a rule, regulation, or order of the defendant at the time of the alleged injuries to Taylor, that at said time Taylor was riding upon a flat car in a train provided with a caboose, that so riding was dangerous, and that Taylor would not have sustained the alleged injuries on the occasion referred to had he ridden in the caboose instead of on the flat, you will find for the defendant, if you further believe from the evidence that he voluntarily placed himself on the flat, with ample room for his safe accommodation in the caboose.

" No. 10.   If from the evidence you believe that the train upon which Taylor was riding at the time he received his alleged hurts was provided with a caboose for the transportation of hands, and that it was sufficiently commodious safely to accommodate Taylor and other hands proceeding along the track in the train; and you further believe from the evidence that Taylor voluntarily placed himself upon one of the flat cars composing the train, and that his situation on the flat was more dangerous than it would have been in the caboose; and you further believe that he would not have been hurt or have sustained the injuries it is alleged he received had he remained in the caboose, you will find for the defendant.   In this connection, if you find riding on a flat car in a work train is dangerous or attended with more danger or risk than riding in the caboose, and that Taylor knew or might have known by the exercise of reasonable care and diligence the danger, then you are instructed that whether or not a printed or written rule prohibiting the riding on flats where a caboose is furnished was promulgated by the defendant is immaterial, for in the absence of affirmative proof that the managing officers or agents of the defendant knew of the habit or practice, if such existed, of hands on work trains riding on flats or in the caboose at their election, the nonexistence of a rule prohibiting the practice can not be considered as sanctioning it."

It was in evidence—indeed, it was the undisputed evidence—that it was the custom of the employes engaged in such service as they were then ordered to do to ride where they pleased, in the caboose or on the flat cars; that they did so habitually with the knowledge of the defendant, who so

carried them without objection.  There was no order prohibiting the practice.

If any charge was needed upon this subject, the demand was fully and sufficiently met by the court's general charge upon contributory negligence of deceased.

We find no error in the rulings of the court below or in the judgment that requires a reversal, and our conclusion is that the judgment ought to be affirmed.

*Affirmed.*