### Gulf, Colorado & Santa Fe Railway Company v. Charles C. Warner.

#### Decided November 4, 1899.

**1.  Railway Switchman—Failure to Observe Defects in Track.**

Where the evidence showed that a switchman was walking beside a moving train in the switch yards, looking to the foreman for the signal to cut it, and upon getting the signal stepped in between the cars to uncouple them, and by reason of a hole or uneven surface there was caused to fall beneath the cars, it could not be said as matter of law that he must have known of the defective condition of the track had he exercised ordinary care, his regular work being in another part of the yard, and he having never before walked over the path where the injury occurred.

**2.  Damages for Personal Injuries—Double Recovery.**

In an action for personal injuries a charge is not erroneous as permitting the jury to allow damages twice for diminished capacity to earn money because it instructs that in estimating the damages they might consider the value of the time lost during the period of disability, and also the probable effect of the injuries on plaintiff's physical condition and his ability to earn money.

**3.  Same—Verdict Not Excessive.**

A verdict of $10,000 is not excessive in the case of a railway switchman, a strong, healthy man, earning $1080 a year, with a life expectancy of 33 years, where the injuries caused severe and protracted suffering and the amputation of a leg above the knee, and he is rendered unable to support himself.

**4.  Ordinary Care—Switchman—Condition of Track—Assumed Risk.**

A charge that if plaintiff, a yard switchman, by the exercise of ordinary care could have discovered the defective condition of the track where he was injured, he assumed the risk of doing the work there, is properly refused, as plaintiff had the right to assume that the track was in a reasonably safe condition.

Appeal from Johnson.  Tried below before Hon. J. M. Hall.

*J. W. Terry* and *Ramsey, Brown & Odell,* for appellant.

*Poindexter & Padelford,* for appellee.

BOOKHOUT, Associate Justice.—This is a suit by Chas. C. Warner against the Gulf, Colorado & Santa Fe Railway Company to recover damages for personal injuries sustained by him.

Plaintiff in his petition, among other things, charges that the defendant had, prior to October 18, 1893, four branches of its road centering in Cleburne, and in the conduct of its business it had a roundhouse and switch yard in Cleburne; that the main switch yard was situated west and adjoining the roundhouse, where most of the defendant's

switching was done; that another switch track ran east and rather north of the roundhouse to the stock yards, and was known as stock yard track No. 1; that two other stock tracks led off from stock track No. 1 in a northern direction, said tracks being known as switch tracks Nos. 2 and 3. That where No. 2 intersects and leads off from No. 1, on the inside of the east rail of No. 1, there was situated a dangerous and unblocked guardrail; and that track No. 1 near and opposite the place where said guardrail was situated was unfilled and ungraded, and that left a hole or depression in defendant's said track near and opposite this guardrail. All of which rendered defendant's switch track at said place dangerous for switchmen in coupling and uncoupling cars.

That prior to October 18, 1893, plaintiff was employed by defendant as switchman in said switch yard, and was working in said capacity when injured; that the switch crew with which defendant was working at such time consisted of a foreman, a fireman, an engineer, and three switchmen; that this switch crew was on this day ordered to leave the main switch yard and go out upon switch track No. 1 and get some stock cars which were standing on No. 2. That in order to get out upon No. 2 they had to push certain other box cars which were standing on No. 1 beyond No. 2; and that for this purpose the engine was attached to said cars which were standing on No. 1, and was set in motion and was slowly pushed northward on No. 1; that just as said cars were slowly passing said place where No. 1 intersects No. 2, and when the farthest end of the car next to the engine was a little south of said place where said dangerous guardrail and said ungraded and dangerous track was situated, plaintiff was opposite and near said place watching said foreman of said switch crew and vice-principal of the defendant, in order, as was his duty, to obey all signals and orders and to execute all orders given by said foreman; and that just as said north end of said first car next to the engine was approaching said guardrail, going slowly north, the plaintiff received a signal and order from said foreman to at once cut said box cars, all except the one next to the engine, allowing those cut loose to be pushed north and to be left standing north of the place where No. 2 connects with No. 1; and that it was plaintiff's duty to obey said signal and order, and in obedience to said signal plaintiff approached the track upon which said cars were being pushed upon the east side thereof, got upon the outside of the rails, and there attempted to cut said cars as ordered, and was walking along outside of said track just outside of said rails looking at the coupling he was about to make, and while in the act of reaching over to uncouple said cars, he came to that part of the track which had not been properly graded and filled up, and where said hole and depression had been negligently left by the defendant, and by reason of said defect he was caused to stumble and was about to be precipitated between the cars, and that in order to regain his equilibrium he was compelled to place his left foot over between the rails to keep out of the way of the moving cars, and in making the step northward his foot was caught in the unblocked guardrail and be-

came tightly wedged in between said guardrail and the main rail of track No. 1, and became so securely fastened therein that he was unable to pull the same out and unable to extricate himself therefrom. That seeing his danger he threw all of his body, except his said foot and leg, outside of said rail of said track, and the wheels of the car next to said engine were caused to pass over plaintiff's left foot, ankle, knee, and leg, and to drag the same beneath the wheels, along said track, and crushed and tore all the flesh from plaintiff's said leg from his foot to above his knee, thereby completely separating and severing the lower from the upper part of said leg at the knee joint; all of which necessitated the amputation of his leg midway between the knee and hip joint. That the said injury was caused by the negligence of the defendant, plaintiff laying his damage at $25,000.

Defendant answered by general denial and special plea that the condition of the track complained of was known or ought to have been known to plaintiff prior to the accident, and that he assumed the risk and was guilty of contributory negligence.

There was a trial and verdict and judgment for plaintiff, and defendant has prosecuted a writ of error to this court.

*Findings of Fact.*—Plaintiff was in the employ of the defendant in the capacity of switchman in its switch yards in Cleburne on or about October 18, 1893, when he was injured.

The defendant on and prior to said day and date had four lines of its road centering in Cleburne, and for the purpose of conducting its business had a roundhouse and a switch yard in Cleburne. The defendant's main or regular switch yard was situated west of the roundhouse, and defendant also had stock switches Nos. 1, 2, and 3, which ran east of the roundhouse and was known as its outside yard. The defendant all the time employed one regular switch crew, and part of the time employed two switch crews. The regular crew was called the inside crew, and the irregular crew was called the outside crew. The regular, or inside crew, did its business principally on the regular switch yard west of the roundhouse. The plaintiff, Warner, belonged to and worked with the regular, or inside crew.

On and prior to October 18, 1893, when plaintiff was injured, the switch yards of the defendant which lay west of the roundhouse were graded and surfaced.

The plaintiff was injured while working in the outside yard on switch track No. 1. That portion of defendant's yard on stock track No. 1, where plaintiff was injured, was at and before the injury in a bad condition and dangerous and unsafe.

The track where plaintiff was injured at the time of the injury was not surfaced or graded. It had been filled in the center of the track, but the filling sloped down from the center, and at the rail and from there to the end of the ties there was no filling or surfacing. There was a depression or hole in the track from six to eight inches deep with

reference to the surface of the ground. The plaintiff did not know of said hole and of the dangerous condition of the track at the time of the accident. The plaintiff was injured by reason of the defective condition of the track. He had just gotten off the engine and was walking along the side of the track watching the foreman, who was on the top of the box car some distance north of him. The plaintiff's attention was directed upon the foreman to catch whatever signal or order the foreman should give him. When the signal was given, the plaintiff's attention was called to the duty he was about to perform, and without noticing the track, and believing that everything was safe, he stepped upon the track, and in attempting to uncouple the car, stepped into the hole or depression, causing him to lose his balance, to maintain which his left foot was thrown over between the rails and was caught between the guard rail and main east rail No. 1. He was run over by the car wheel and his foot and leg clear up above his knee was ground to pieces, and the lower portion of his leg severed from the upper, above his knee. He received two severe injuries on his shoulders by having them dragged and bumping over the end of the cross ties. Plaintiff was damaged in the amount found by the jury. Plaintiff was not guilty of contributory negligence, nor did the plaintiff in his employment and duties assume the risk and danger of the defects in the track which caused the injury.

*Conclusions of Law.*—Plaintiff in error, in its first assignment of error, complains that the court below erred in overruling its motion for a new trial for the reason that the verdict of the jury is contrary to and unsupported by the evidence and the law, in that the great preponderance of the evidence shows that the plaintiff knew of the condition of the defendant's track and the defects in the same, if such defects existed, or could have known of the same if he had exercised ordinary prudence and diligence, or the care and diligence which a man of ordinary prudence would have used under like or similar circumstances.

The testimony shows that the plaintiff was walking along by the side of the track watching the foreman, who was on the top of a box car some distance away, for the signal from the foreman. The train was moving slowly. When the signal was given, the plaintiff in response thereto stepped upon the track to go in between the cars and uncouple the same. In so doing he stepped into a hole or depression, which caused him to lose his balance, and in trying to maintain or regain his balance he stepped his foot inside the guardrail without knowing it, and his foot got caught, and before he could extricate himself he was ground down between the outside rail and the guardrail. He was run over by the cars and dragged along the rail fifteen or twenty feet and seriously injured. He says he attributes his foot getting fastened to the hole in the track, which caused his foot to dip down and caused him to lose his balance.

The plaintiff further testified that he did not know the hole was there.

The contention of the plaintiff in error is, that as a matter of fact there was no hole there, other than the unfilled or unsurfaced space between the ties, and that the fact that the track was unsurfaced was patent, and the plaintiff knew it or could have known it by the exercise of ordinary care. The track was not graded or surfaced. The plaintiff testified that he stepped in a hole which he says, with reference to the surface of the ground, was six or eight inches deep. He further stated that he never passed over the track where he was injured previous to the time of his injury. He says, "I have ridden over it, but never walked over it."

The evidence shows that plaintiff belonged to the regular switch crew, and his work was principally done in the regular switch yard west of the roundhouse, and not in the yard where he was injured. As soon as he alighted from the engine to uncouple the cars he started along the track with his eyes directed upon the foreman, who was on top of a box car, watching for the foreman to give the signal for him to pull the pin. He evidently could not have discovered the condition of the track while thus walking and watching the foreman. We can not say as a matter of fact that he must have discovered the condition of the track after receiving the signal and while attempting to pull the pin. Railway v. Parr, 26 S. W. Rep., 861; Railway v. Guy, 23 S. W. Rep., 633; Railway v. Pitts, 42 S. W. Rep., 255; Railway v. Taylor, 79 Texas, 104.

The jury found for the plaintiff on this issue, and there being evidence to support their finding, we think there was no error in overruling the motion for new trial based upon the above contention.

Plaintiff in error also contends that the court erred in overruling its motion for new trial, because the record shows that the injury complained of by plaintiff was the result of contributory negligence on his part. This issue was also submitted to the jury under a charge clearly stating the law, and their verdict is amply supported in this respect by the evidence.

The second assignment of error by plaintiff in error complains of the following charge: "If you find for the plaintiff you will return a verdict in his favor for the amount of damages which he has suffered by reason of his injuries, and in estimating such damages you may consider the value of time lost during the period of his disability, and if you find he has been disabled, his expense for drugs and nursing, if any, the probable effect of such injuries upon his physical condition, and his ability to earn money and pursue the course of life for which he was fitted and suited, and a fair compensation for mental suffering and physical pain caused by such injuries. And if you find for the plaintiff, the form of your verdict will be: 'We the jury find for the plaintiff and assess his damages at —— dollars.' "

The contention is made that "to allow for the value of time lost during the period of disability, and also for the probable effect of such injuries upon his physical condition and his ability to earn money and to pursue the course of life to which he was fitted and suited, was cal-

culated to lead the jury to believe that they were to allow damages twice for the same thing under a different name."

We do not think the charge is subject to this criticism. It first told the jury that if they found for plaintiff to return a verdict for the damages sustained by reason of his injuries; and it then proceeds to tell them what matters they may take into consideration in arriving at the damages. The elements of damage authorized by the above charge to be considered by the jury are substantially the same as those approved in Railway v. Greenlee, 62 Texas, 354, and Railway v. Randall, 50 Texas, 261. The jury could not have been misled into giving damages twice for the same thing by the charge. We overrule the second assignment of error.

The third error assigned complains of the action of the court in refusing to grant a new trial on the ground that the verdict is excessive. We have carefully examined the evidence and we do not think the above assignment well taken. The plaintiff at the time of the accident was a strong and healthy man, and had a life expectancy of 33 or 34 years. He was earning $1080 per year. He received serious and permanent injuries requiring amputation of his leg between his knee and hip joint. He suffered intensely, and was confined to his bed for about eight weeks and to his house much longer. He is now unable to make a support for himself. The verdict is not excessive.

In its fourth assigned error, plaintiff in error contends that the court erred in refusing its sixth requested special charge. The charge as requested instructed the jury, in effect, that if by the exercise of ordinary care the plaintiff could have ascertained the condition of the track, then he assumed the risks of doing the work. The plaintiff had the right to assume that the track was in a reasonably safe condition. If he had knowledge that it was not in such condition, or in the ordinary discharge of his own duty must necessarily have acquired the knowledge, he could not recover. He was not bound to exercise ordinary care to have ascertained the condition of the track. Railway v. Hannig, 91 Texas, 351.

The court did not err in refusing to give special charges 4 and 6 complained of in the fourth and fifth assignments of error. These charges related to the failure of defendant to have its guardrail blocked, and to the condition of its track, and the question of assumed risk. The court had eliminated the issue of negligence as to the unblocked guardrail by refusing to submit this issue to the jury.

The court in its general charge had charged fully on the issues as to defective track and assumed risk. Besides, the special charges as worded ignored the evidence in reference to there being a hole in the track.

The charge of the court complained of in the plaintiff in error's sixth assignment of error is not subject to the criticism made in said assignment. In framing the charge there must necessarily have been some repetition of the same words to properly apply the law to the case as made. The jury could not have been misled by this charge.

There was no error of which the plaintiff in error can complain in the charge of the court as set out in its seventh assigned error. This charge was more favorable to defendant than the law required. It required the plaintiff to use ordinary diligence to discover the condition of the track. As above stated, he was not required to use diligence in this respect. Railway v. Hannig, supra. There was no error in refusing the third requested charge of defendant, because the same was properly embraced in defendant's special charge number 2 given by the court.

The ninth error assigned complains of the action of the court in refusing special charge number 7 requested by the defendant. We do not think this charge is correct, because it is upon the weight of the evidence. The law upon the issue of contributory negligence as given by the court in its general charge fairly covered this phase of the case.

The court did not err in refusing the special charge number 5, as complained of in the tenth assignment of error. There was no exception taken to the admission of the evidence sought to be controlled by this charge at the time it was admitted. There was evidence fairly tending to show that the hole which defendant testified he discovered several weeks after his injury was the same hole which he testified he stepped into and was the cause of the injury. The plaintiff went into an explanation giving his reasons for saying that the hole he found after the accident was the same into which he stepped and which caused the injury. Again, the requested charge was upon the weight of the testimony.

The objection urged in the eleventh assignment of error to that part of the court's charge therein set out is not tenable. The charge was correct, and the jury could not have been misled by the same.

There is no error in the charge of the court complained of in the twelfth assignment of error. This charge is general. The defendant asked its special charge number 2, which carefully defined the duty which the defendant owed the plaintiff in furnishing a safe track and machinery, and cured any omission in the general charge complained of in said assignment.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*