TEXAS CO. v. GARRETT.

(Court of Civil Appeals of Texas.   Feb. 7, 1911.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR — PROPOSITIONS ACCOMPANYING ASSIGNMENT.

An assignment of error in admitting the testimony of certain witnesses, not followed by any proposition or statement, except the bill of exception reserved to the admission of the testimony, which is insufficient to show that the testimony was harmful, or even that it was not admissible, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT — ASSUMPTION OF RISK — KNOWLEDGE OF DEFECT.

Where a servant knew of knots in a lever before it broke, and of the effect of the knots as rendering the lever weak and insufficient, he assumed the risk of injury therefrom by continuing in the service.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

3. MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT — ACTION — INSTRUCTIONS—ASSUMPTION OF RISK.

A charge that, if plaintiff's injuries were caused by the breaking of a lever, and the lever was defective and insufficient, yet the jury should find for defendant on that issue, because it was shown by the uncontradicted evidence that, if the lever was defective and insufficient, such defect and insufficiency were known to plaintiff, and, so knowing them, he continued in the service of defendant, and assumed the risk incident to its use, could not have been misunderstood as instructing that, if the breaking of the lever caused the injury, the jury should find for defendant, regardless of the other grounds of negligence relied on.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

4. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT — ASSUMPTION OF RISK — KNOWLEDGE OF DANGER.

To charge an employé with knowledge of a defective implement and the assumption of risk in using it, it must be shown that he knew of the defect, or, in the exercise of ordinary care in the discharge of his duties, must necessarily have acquired the knowledge, and not that in the exercise of such care he should have discovered the defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by W. W. Garrett against the Texas Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Jas. L. Autry, H. M. Whitaker, and Robt. A. John, for appellant. Blain & Howth and M. G. Adams, for appellee.

McMEANS, J. Appellee Garrett, plaintiff in the court below, sued the appellant, the Texas Company, for damages sustained by him while in the service of appellant in the capacity of pipe fitter, while engaged with others in laying a pipe line.

It appears that appellee was a member of a crew engaged in laying for appellant a lateral pipe line from appellant's refinery at Port Arthur to one of its tanks; the work of the crew consisting of screwing joints of pipe together, so as to form a continuous line of pipe that was to be laid, and then lowering the jointed pipes into a trench or ditch. Before being lowered into the ditch, the pipe was sustained over the ditch by a "growler board" and a "jack." The growler board consisted of a piece of scantling six or eight feet long, which was placed across the ditch, and the immediate end of the pipe was sustained by a jack. Before the pipe could be lowered, it was necessary to remove both the board and the jack. The ditch was about two feet wide and three feet deep. In order to relieve the board and jack of the weight of the pipe, so that both might be withdrawn, the pipe had to be pryed up by the use of a lever operated by a part of the crew. On the occasion of his injury, it was the appellee's duty to remove the growler board, and the duty of Jack Walsh, another member of the crew, to remove the jack. Just before appellee was hurt, a part of the crew had, by means of the lever, which consisted of a 4x4 scantling, raised the pipe above the board and the jack, and appellee was in the act of removing the board, when the lever broke, precipitating the pipe into the ditch, striking the growler board which had been partially withdrawn, causing one end of it to fly up with considerable force, striking and breaking appellee's jaw and inflicting the injuries for which he sued. It was shown that it was the duty of Walsh to not remove the jack until the board was fully withdrawn, but that on this occasion he removed the jack before appellee could withdraw the board. Appellee in his petition predicated recovery upon the appellant's negligence in the following particulars: (1) That the lever with which the pipe was being lifted was defective, being knotty, unsound, unseasoned, and unsafe, causing the same to break, and that the furnishing of such scantling by appellant as a lever was negligence; (2) the carelessness and negligence of appellant's foreman, Jim Donohue, who had charge and superintendence of the work, with authority from appellant to employ and discharge appellee and his fellow workmen, and with authority to control and direct them in their work, in that said foreman permitted and ordered the use of the lever, knowing that the same was defective and unsafe; and (3) that appellant was further negligent in employing Jack Walsh and in retaining him in its employment, for the reason that he was "inexperienced and incompetent for the work to which he was assigned, to wit, removing the jack from under the pipe during the process of lowering the

pipe into the ditch," in that, by reason of an injury to his head, his mind had been weakened, his nervous system disorganized; that he was naturally thoughtless and erratic, and habitually reckless in removing the jack from underneath the pipe before its removal was known to the other employés; and that on the occasion in question the jack was untimely removed by him, and that this was an act of negligence due to Walsh's "incompetency, carelessness, recklessness, and mental weakness aforesaid." Each of these issues was submitted by the court in the charge to the jury. Defendant answered by general denial and pleas of assumed risk and contributory negligence, and further pleaded that, if appellee's injuries were caused by the negligence of Donohue or Walsh, that they were the fellow servants of appellee. The case was tried with a jury, and resulted in a verdict and judgment for appellee, from which appellant prosecutes this appeal.

Appellant's second assignment of error complains of the action of the court in admitting the testimony of certain witnesses. This assignment is not followed by any proposition or by any statement, except the bill of exception reserved to the action of the court in admitting the testimony, and this, by itself, without other explanation, is not sufficient to show that the testimony was harmful, or even that it was not admissible. The assignment is not presented in the manner required by the rules, and appellee's objection to a consideration of it by this court must be sustained.

The court in its general charge submitted to the jury the issue of assumed risk arising from appellee's knowledge of the defectiveness and insufficiency of the lever. The appellant requested the court to charge the jury, substantially, that, if they should conclude that plaintiff's injuries were caused by the breaking of the lever, and that the lever was defective and insufficient, yet they should find for appellant on that issue, because it was shown by the uncontradicted evidence that, if the lever was in fact defective and insufficient, such defects and insufficiency were known to appellee, and so knowing them he continued in the service of appellant, and thereby assumed the risks incident to the use of the lever. On this issue the testimony showed that the lever had been used the entire morning before appellee's injuries; that it had broken once; but as to whether at that time appellee was present, the evidence was conflicting. He did not deny that he knew of the defectiveness and insufficiency of the lever, further than to say that he made no inspection of it. There were some 8 or 12 knots in the lever, which weakened it. These knots could be plainly seen. Before appellee's suit was filed, he went to appellant's attorney, Robert A. John, and voluntarily made a written statement detailing how the accident occur-

red. Among other things he said that the lever was a 4x4 scantling of grained pine and had a knot in it, and that in raising the pipe with this lever the end of the scantling broke, causing the pipe to fall on the growler board, one end of which flew up, striking him on the jaw; that the scantling had already broken once. "I noted the knots on the scantling before it broke;" that he made a remark to Jim Donohue: "Jim, that's no good. We had better get another lever." This statement was introduced in evidence. On being recalled as a witness in his own behalf, appellee testified: "I remember making a statement to Mr. John in Houston. When I detailed to him how the thing occurred, I was telling it to him the way I understood it occurred after the accident— the knowledge I gained after I got hurt. As to whether I told Mr. John that I, before the accident, warned Mr. Donohue about the defective lever, or told him that he was warned about the defective lever—I had reference to him; that Donohue had been warned about the lever. I did not know at the time of the accident that Donohue had been warned. I found that out some time after that; I can't say just how long it was. I just gave him this statement; merely information I gained from the witnesses how this accident happened, and what I learned from the witnesses." This testimony may amount to a denial of so much of the written statement which says that he told Donohue that the lever "was no good," and "we had better get another lever," but in no wise contradicted that part of the statement in which he said "I noted the knots on the scantling before it broke." He says, in his explanation of the statement, that he was only undertaking to detail the information he gained after the accident. Certainly he did not in this way gain the information that he had observed the knots before the lever broke, and it is hard to see that he in this way gained the information that he had said to Donohue, after he observed the knots, "Jim, that's no good; we had better get another lever." The uncontradicted evidence in the record shows that the knots in the lever had the effect of weakening the same, and that the lever in fact broke at one of the knots, and that appellee knew of the knots in the lever before it broke, and of the effect of the knots as rendering it weak and insufficient for the use to which it was applied. Knowing the defects as he did he must necessarily have known of the danger incurred by its use. We think, therefore, that the special charge should have been given. The charge should be so worded, however, as to make it clear to the jury that the breaking of the lever must have been the sole cause of appellee's injury, for otherwise the issue of liability arising from Walsh's incompetency would be ignored. We think that the jury could not have misunderstood the charge as

instructing them that if the breaking of the lever caused the injury to find for defendant, regardless of the other grounds of negligence relied upon by plaintiff to sustain a recovery.

The reasons stated in the special charge why the assumption of such a risk precluded a recovery were unnecessary and immaterial. We think, however, that to charge an employé with knowledge of a defective implement and the assumption of risks in using it, the testimony should show that the employé knew of the defects, or that, in the exercise of ordinary care in the discharge of his duties, he must necessarily have acquired the knowledge, and not that in the exercise of such care he could have discovered the defects, as stated in the charge (Railway v. Hannig, 91 Tex. 350, 43 S. W. 508; Railway v. Warner, 22 Tex. Civ. App. 167, 54 S. W. 1067; Railway v. Cox, 55 S. W. 356; Bookrum v. Railway, 57 S. W. 920); but, in view of the testimony before set out, this inaccuracy in this charge would have been harmless.

We have examined the other assignments presented by appellant in its brief, and have concluded that no reversible errors are pointed out in any of them.

For the error indicated the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.