### MISSOURI, K. & T. RY. CO. OF TEXAS v. KILLETT. (No. 7193.)

(Court of Civil Appeals of Texas. Dallas. June 27, 1914.)

EVIDENCE (§ 129*)—SIMILAR FACTS—ADMISSIBILITY.

Where, in an action for injuries to female passenger while alighting from a train, the issue was whether a miscarriage was produced thereby or by her own wrongful acts, evidence of a resolution by her, prior to a former miscarriage, to resort, in cases of pregnancy, to means available to produce an abortion was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. § 129.*]

Appeal from District Court, Rains County; William Pierson, Judge.

Action by John Killett against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Dinsmore, McMahan & Dinsmore, of Greenville, and Chas. C. Huff, of Dallas, for appellant.

TALBOT, J. Appellee sued appellant to recover damages for personal injuries alleged to have been received by his wife on the 8th day of March, 1913, while, as a passenger, she was alighting from one of the appellant's trains.

It is charged that while plaintiff's wife was in the act of stepping from the bottom step of the platform of the car to a "small box or stool placed near the bottom of the steps for the passengers to step on in getting off the train the train gave a sudden jerk, and, in placing her foot on the box, the box turned, throwing her forward with great violence and down onto the ground with her other foot and against her traveling companion, greatly bruising and injuring her." The grounds of negligence alleged are the moving of the train with a sudden jerk, and that the ground on which the box or stool was placed was rough and uneven. It is alleged that plaintiff's wife was, at the time injured, about three months advanced in pregnancy, and that, as a direct and proximate result of the jar and injuries received, premature labor pains were brought on, causing her to miscarry and lose her child. The defendant answered by general denial, by plea of contributory negligence, and by a special plea that the ills from which plaintiff's wife might be suffering were not caused by any accident in connection with her leaving the train at the time alleged, but that such injuries were brought about and caused by other agencies. The case was tried before a jury, and the trial resulted in a verdict and judgment in favor of the plaintiff for the sum of $900, and the defendant appealed.

Appellant's fourth assignment of error is as follows:

"The court erred in sustaining the plaintiff's objection and in not permitting the defendant to prove by defendant's witness Mrs. Pearl Jones, after Dr. P. W. Pearson had testified in defendant's behalf, that some time in the month of December, 1911, she (witness) came with plaintiff's wife, Mrs. Maggie Killett, from the village of Ginger to Emory and returned in a buggy, and that while on said trip, after plaintiff's wife, Mrs. Maggie Killett, had told witness that she was pregnant, that she then asked the witness, Mrs. Pearl Jones, if she could tell her anything that she could do that would cause her to abort, and that the witness, Mrs. Pearl Jones, told plaintiff's wife that she could not, and that then plaintiff's wife stated to witness that she was going to have her teeth extracted at that particular time, because she thought it might cause her to abort, and that about one month later, some time in the month of January, 1912, witness was called to plaintiff's residence about daylight one morning, this being the time testified about by plaintiff's wife when she aborted, and Dr. Allen waited on her, and that when witness reached plaintiff's house she found that plaintiff's wife had aborted, and that plaintiff's wife then told witness that she had used camphorized mentholatum, and that that was what caused her to abort, and that she had now found out what would make her abort, and that she never expected to bear any more children, and that on the third day after plaintiff's wife had aborted that witness, Mrs. Pearl Jones, and Mrs. Lula Doyle and Mrs. Delia Casey were at plaintiff's house, and that they used a syringe and administered to plaintiff's wife a douche, and that while so doing the plaintiff's wife made the following statement to them, 'What do you reckon people would say if they knew what had been in that syringe?' and that plaintiff's wife then further stated that she had used camphorized mentholatum on herself by the use of the syringe, and that that was what had caused her to abort, all of which is fully shown in defendant's bill of exception No. 8."

It is also assigned that the court erred in sustaining plaintiff's objections and in not permitting the defendant to prove by Mrs. Lula Doyle and Mrs. Delia Casey, who are mentioned in appellant's fourth assignment of error, that some time in the month of January, 1912, and on the third day after plaintiff's wife had miscarried or aborted, they were present with Mrs. Pearl Jones at plaintiff's home, and that they used a syringe to administer to plaintiff's wife a douche, and that while they were using the syringe,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

or preparing to use it, plaintiff's wife asked, "What do you reckon people would say if they knew what had been in that syringe?" and said that "she had used camphorized mentholatum on herself by the use of the syringe, and that that was what caused her to abort." The objections urged and sustained to this testimony were that the same was irrelevant, immaterial, incompetent, and hearsay. The proposition contended for by appellant in support of its contention that the court erred in not allowing the testimony is that:

"The pleadings and the evidence having sharply raised the question of whether plaintiff's wife was fraudulently pretending that her abortion had been caused by a jar of her body while alighting from the car, her previous acts and declarations about similar occurrences near the same time, and tending to show a fixed purpose and a systematic course of conduct to produce abortions, were relevant, and were admissible as tending to throw light upon the producing cause of the abortion for which damages were asked."

These assignments and proposition present the only question for decision. Mrs. Killett, the plaintiff's wife, testified that Mrs. Agnes Jones was traveling with her on the occasion of her injury; that when the train stopped at Point she and Mrs. Jones got up and started to get off; that they walked down the steps of the car, and as she was stepping from the bottom step to the step box the train moved and jerked. She said:

"When I stepped down, just as I put my left foot on the box the train started. Then I stepped down on the ground with my right foot. * * * I stepped with my left foot on the box, and stepped with my right foot on the ground at the end that would be the south or east end of the box. At that time Mrs. Jones was on the ground, not right in front of me, but a little below me to my left, next to the car. She stepped off and turned to go down like we would start home, and I just put my hand on her to keep from falling. * * * No, sir; I did not fall down at all; I just stepped down on my right foot; my left foot was on the box; my left foot was still on the box when I set my right foot on the ground."

Mrs. Killett further testified that after the accident she got in a buggy with Mrs. Jones and drove to her home in the country; that she was suffering on the way home; that she informed Mrs. Jones that she was suffering, but did not inform her that she was threatened with miscarriage; that Mrs. Jones left the buggy some 200 yards before she reached plaintiff's home; that she miscarried while she was in the buggy; that the fetus was very small; that she had miscarried once before, which was in January, 1912, and that was the only time she had miscarried except the time involved in this suit; that Dr. Allen waited on her in January, 1912, when she miscarried; that Dr. Pearson had been called to see her, but that she had not miscarried or suffered an abortion at the time Dr. Pearson was called to see her. Mrs. Agnes Jones, a witness for defendant, testified that she was traveling with plaintiff's wife at the time of the alleged accident, and left the train with her; that if the train moved at the time they were leaving it, or if anything unusual happened there, or if Mrs. Killett caught to her, she did not know it; that after leaving the train they got in the buggy and drove to their home; that on the way home Mrs. Killett acted and talked as usual, and made no complaint or statement about being injured. Dr. P. W. Pearson, witness for defendant, testified that in July, 1912, he was called to see Mrs. Killett, plaintiff's wife, and found her about to abort, and that she did abort at that time; that if campho-mentholatum or mentholatum should be inserted in the womb of a pregnant woman it would cause her to abort. J. P. Smith, defendant's conductor, testified that at the time Mrs. Killett claims to have been injured there was no movement of the train, and that nothing happened to her when she got off the train to cause her an injury. This testimony was amply sufficient to raise the issue of whether the plaintiff's wife, as a result of the alleged negligence of appellant's servants, received an injury or jar while she was alighting from appellant's train which cause her to miscarry, or whether she was caused to abort or miscarry from some cause for which appellant was in no way responsible, and the testimony excluded was material and relevant to that issue. We are aware of the rule that proof of drunkenness or habitual excess in the use of intoxicants on other occasions by the plaintiff in a personal injury suit is not admissible on the issue of his drunkenness at the time of his injury, and also of the rule that, when the question is whether or not a person has been negligent in doing or failing to do a particular act, evidence is not admissible to show he has been guilty of a similar act of negligence, or even habitually negligent upon a similar occasion, but we regard the question now before us as more analogous to the question of motive or intent usually involved in cases of fraud, in which a very wide range is necessarily given in proving the facts or circumstances which tend to establish or repel the fraud. Usually in such cases "it is only by collecting and grouping together numerous circumstances tending to show the fraud that it can be established." So it has become a well-settled doctrine that, where the issue involves the fraudulent sale or conveyance of property, evidence of other like sales or conveyances by the same parties at or about the same time are admissible. It is said that the ground for the admission of such evidence is that, where transactions of a similar character, executed by the same parties, are closely connected in time, the reasonable inference is that they proceed from the same motive. Day v. Stone, 59 Tex. 612. No case just like the one before us has been cited by counsel, and we have in the search given been unable to find one; but it occurs to us that for as strong, or stronger, reason given for the wide range allowed in proving the circumstances which tend to establish or re-

pel the charge of fraud in the sale or conveyance of property, the evidence offered by appellant and rejected by the court in this case was competent for the purpose offered. The undisputed testimony in the case shows that Mrs. Killett suffered a miscarriage in about one month from the date appellant sought to show by the excluded testimony of Mrs. Jones that she asked her "if she could tell her anything that she .could do that would cause her to abort," and stated that she was going to have her teeth extracted because she thought it might cause her to abort, and, according to the testimony of Dr. Pearson, which is contradicted by Mrs. Killet, she again aborted or miscarried in about six months thereafter, and after she, according to the proposed testimony of Mrs. Jones, Mrs. Doyle, and Mrs. Casey, had stated that she had produced the first miscarriage by the use of camphorized metholatum, and that she would rather die than give birth to another child. The excluded testimony tended to show a firm resolution formed by Mrs. Killett prior to the first miscarriage not to bear any more children and a fixed determination to resort, in case of pregnancy, to such means available as might be necessary to produce an abortion. The excluded testimony was therefore, we think, clearly admissible to be considered by the jury in determining the cause of the miscarriage suffered by appellee's wife, which is charged to the negligence of appellant, and for which appellee seeks to recover damages in this suit. That the exclusion of the testimony was probably prejudicial to appellant there can be no doubt.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial.