KANSAS CITY, M. & O. RY. CO. OF TEXAS et al. v. ODOM.   (No. 550.)

(Court of Civil Appeals of Texas.   El Paso. April 13, 1916.   Rehearing Denied May 4, 1916.)

1. TRIAL ☞349(1)—SUBMITTING SPECIAL ISSUES.

Submitting or refusing to submit special issues of fact raised by the evidence is not the giving or refusing of special charges, and so not controlled by the rules applicable thereto.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 823; Dec. Dig. ☞349(1).]

2. TRIAL ☞350(6) — SPECIAL ISSUES — ULTIMATE FACTS—DELAY IN TRANSPORTATION.

The ultimate issue of negligence, in an action against a carrier for delay in transportation, was properly and sufficiently submitted by a special issue, whether the delay, if any, or any part of it, and if any, what part could have been avoided by the exercise of ordinary care, rather than by special issues on evidentiary and inconclusive facts, as whether the accident to the train was unavoidable; this not necessarily including the idea of an unavoidable delay resulting therefrom.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 830; Dec. Dig. ☞350(6).]

3. CARRIERS ☞104 — NEGLIGENT DELAY IN TRANSPORTATION—EVIDENCE.

Evidence in an action for delay in transportation of a live stock shipment held not to support the finding of period of delay which could have been avoided by exercise of ordinary care.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 439–447, 459–461.; Dec. Dig. ☞ 104.]

4. CARRIERS ☞177(2)—CONNECTING LINES—LIABILITY.

Where the initial carrier agrees to transport only to a certain point, though the shipment is consigned to a point beyond, there is no through contract of shipment, necessary for joint liability of the connecting carriers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 776, 777; Dec. Dig. ☞177(2).]

5. CARRIERS ☞96 — TIME OF TRANSPORTATION—IMPLIED CONTRACT.

Where the contract of shipment does not obligate the carrier to deliver at a special time, or on a special market, an agreement to deliver in a reasonable time is implied; so that no necessary or reasonable delay constitutes a breach of the carrier's duty.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 396–426; Dec. Dig. ☞96.]

Appeal from District Court, Pecos County; W. C. Douglas, Judge.

Action by John M. Odom against the Kansas City, Mexico & Orient Railway Company of Texas and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

H. S. Garrett, of San Angelo, and Williams & Jackson, of Ft. Stockton, for appellants. Sanford & Wright, of Eagle Pass, for appellee.

WALTHALL, J.   By his suit filed in the district court of Pecos county, appellee, John M. Odom, sought to recover damages of the two appellants, railway companies, alleged to have been occasioned by delay in the shipment of cattle to market from Ft. Stockton to Ft. Worth, Tex. He alleged a delivery of 83 head of cattle, consisting of cows and steers, to the Orient Company in its stock pens at Ft. Stockton at about four o'clock p. m., September 20, 1914, under a contract to ship same over its line to Sweetwater and from there over the Texas & Pacific Railway to consignees at Ft. Worth. Appellee alleged a negligent delay in the shipment of said cattle on both roads; alleged that the customary, ordinary, and reasonable time to transport cattle from Ft. Stockton to Ft. Worth is from 30 to 33 hours; that by ordinary care and diligence said cattle would have reached Ft. Worth by ten o'clock on the morning of September 22d, but that the shipment was negligently and unreasonably delayed en route about 24 hours, reaching Ft. Worth about 10 o'clock on the morning of September 23d. Appellee alleged that, in consequence of said delay, said cattle shrunk in weight and deteriorated in quality in excess of what their shrinkage and deterioration would have been, had the shipment been made in ordinary time; and it was for damage resulting from this additional loss in weight and quality that appellee sued.

Appellant Orient Railroad answered by general demurrer and general denial; denied any liability for any delay on the Belt Line at Ft. Worth; alleged that the cattle were forwarded from the initial point on the first

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

train going east to Sweetwater after the cattle were placed in the stockpens; alleged that appellant used due diligence and dispatch, and made good time in the movement of the cattle until an unavoidable accident happened to the engine and boiler pulling the train; that the accident consisted of the breaking of a steel bar, a part of the steam rigging on the inside of the engine boiler, rendering it necessary to secure another engine to pull the train; appellant alleged a careful inspection of said engine and boiler, due care in operating the engine and boiler, and that the breaking of said steel bar could not have been foreseen or prevented by the use of ordinary care; that the breaking of said bar occasioned all the delay that occurred on its road. Appellant alleged that the shipment was not enough to make a trainload, or to require appellant to send same out on an extra train, and that the cattle were shipped from the initial point on the first train, and that the cattle were shipped at the earliest moment same could have been shipped without shipping by special train.

The only agreement or contract pertaining to the transportation of said cattle found in the record is as follows:

"Agreed by counsel for both sides that plaintiff, John M. Odom, signed a 36-hour release when this shipment of cattle was made, and also that no other contract was made with the Kansas City, Mexico & Orient Railroad, but that the road only agreed to transport the cattle to Sweetwater; that each road contracted that it should not be liable for damages except on its own road; the contract showed that the cattle were consigned to Ft. Worth."

The appellant Texas & Pacific Railway Company answered by general demurrer and general denial; alleged that by contract it limited its liability to damage occurring on its own line; pleaded appellee's 36-hour release contract; alleged that the cattle were shipped over its line with due dispatch to Baird on its line; that Baird is a division point; that when the shipment reached Baird the cattle had then been on the road so long that it was impossible to reach a place beyond suitable to unload them within the 36 hours, by reason of which it was necessary to unload, feed, and water said cattle at Baird; that at Baird the cattle were reloaded and shipped into Ft. Worth and there delivered to the Belt Railway in due time and with reasonable dispatch. Appellant the Texas & Pacific Railway Company alleged that the cattle were handled by it without accident or unusual delay and that the only delay occurring on its line was in the necessary watering and feeding at Baird; alleged that the shipment of the cattle was not enough to make a trainload, and was not sufficient to authorize or pay or require it to send out an extra train, and that the cattle were shipped from Sweetwater on the first train and at the earliest moment same could be shipped without making up and sending a special train; that said cattle could not have been delivered by it to Ft. Worth in time to get on any earlier market than the one they were sold on, had it not stopped the shipment to feed and water at Baird.

On special issues submitted to them, the jury found: That the transportation of the shipment of the cattle from Ft. Stockton to Ft. Worth consumed more than the usual and ordinary length of time for transporting such shipments; that is, that there was a delay in the transportation of said cattle; that such delay could have been avoided by the exercise of ordinary care on the part of the defendants; that about 23 hours in time the shipment was delayed in transportation could have been avoided by the exercise of ordinary care; that the delay resulted in damage to plaintiff; that 25 pounds per head was the difference in the shrinkage of the cattle in the condition in which they arrived and the condition they would have arrived in, had there been no delay which could have been avoided by the exercise of ordinary care; that the difference in the market value per 100 pounds of said cattle in the condition in which they arrived and the condition in which they would have arrived, but for the delay, is 15 cents per 100 pounds, a total damage of $203.68. Upon these findings of the jury, the court entered judgment for plaintiff.

[1, 2] Appellants complain in their first assignment of the refusal of the court to submit to the jury special issues 3 and 4, tendered to the court by them for submission. The third special issue submitted reads: "Was the accident to the engine throttle rigging, testified to and for which it is claimed in the evidence that there was 6 hours and 35 minutes delay, unavoidable?" The fourth special issue submitted is very similar in meaning and reads: "Could said accident have been avoided by the use of ordinary care on the part of the K. C., M. & O. Ry. Co. of Texas and its agents and employés?" Several objections are made to the consideration of this assignment. The objections are presented on the assumption and invoke the same rules that apply to the submission of special charges. Submitting special issues of fact raised by the evidence or refusing such submission is in no sense the giving or refusing to give a special charge, and hence not controlled by the rules applicable to the giving or refusing of special charges. Shaw v. Garrison, 174 S. W. 942; Texarkana & Ft. S. Ry. Co. v. Casey, 172 S. W. 729; Tomson v. Simmons, 180 S. W. 1141. The Supreme Court of this state in G., H. & S. A. Ry. Co. v. Cody, 92 Tex. 632, 51 S. W. 329, said that a request to submit a case on special issues is not a charge refused, and stands upon a different footing. The court refused to submit both of the special issues to which the appellants duly excepted, and made the refusal to submit each of the special issues separate grounds for a new

trial in their amended motion. The court approved the bills of exception with the explanation "that the accident in question was not an issue raised by the pleadings, but was merely an evidentiary issue, and because same was one of 15 different issues embraced in an omnibus request." We are of the opinion that the issues submitted were evidentiary facts merely, and did not go directly to the issue before the court. A jury might find that an accident itself is unavoidable, as submitted in the third issue, and that an accident itself could not be avoided by the use of ordinary care, as submitted in the fourth issue, and yet have found that a delay caused by an unavoidable accident could be avoided by the exercise of ordinary diligence. We must not be understood as holding that the delay in this particular case could have been avoided, but we mean only to point out that an unavoidable accident does not necessarily include the idea of an unavoidable delay resulting therefrom. The question of the avoidance of the delay was the issue before the court and not the cause of the delay; in other words, the avoidance of the result of the accident rather than the avoidance of the cause. The court submitted to the jury, in two separate special issues, the following: "Whether or not such delay, if any, or any of it, could have been avoided by the exercise of ordinary care" and "How long in time said shipment was delayed, if at all, in transportation which could have been avoided by the exercise of ordinary care." We think the issue of negligence was sufficiently and properly submitted to the jury by the above charges.

[3-5] In appellant's second assignment of error, complaint is made that the finding of the jury, that about 23 hours in time the shipment was delayed in transportation could have been avoided by the exercise of ordinary care, is not supported by the evidence. The estimate of the damage to the cattle in the Ft. Worth market is based entirely upon this finding. In order to find from the evidence that the shipment was overly delayed 23 hours, it is necessary to take into the estimate the time lost on the Orient road occasioned by the breaking of the rod in the engine boiler, and the time consumed in feeding and watering the cattle at Baird, Tex., on the Texas & Pacific Road. Plaintiff's suit is for the delay in the transportation of the cattle from Ft. Stockton at 1:55 a. m. on September 21st, and were delivered to the Texas & Pacific Railway Company at Sweetwater at 12:45 a. m. on September 22d. The distance from Ft. Stockton to Sweetwater is 241 miles; 16.4 miles per hour is the schedule on that train on time-card. The transportation of the cattle on the Texas & Pacific road from Sweetwater commenced on the first train going to Ft. Worth at 3:30 p. m., September 22d, and arrived at Baird at 7:55 a. m., same day. The cattle had then been in the cars about 30 hours and 20 minutes. The undisputed evidence shows that from Baird, a division point, the shipment could not reach another division point before the expiration of the 36 hours. Under the law it was necessary to unload, feed, and water the cattle, which was done. Plaintiff testified that the ordinary and customary time in making a shipment from Ft. Stockton to Ft. Worth is from 31 to 32 hours to 36 hours. It seems evident from the allegation and proof as to the ordinary and customary time that it takes to make a shipment of cattle from Ft. Stockton to Ft. Worth, should there be a delay in the transportation for as much as four or five hours, whether the delay is avoidable or unavoidable, that it would be necessary at some point between Ft. Stockton and Ft. Worth to unload, feed, and water, even with the 36-hour release. Under the contract above stated the Orient road agreed to transport only to Sweetwater; and each road by the contract limited its liability to damage occurring on its own line of road. In order to even approximate in time the 23 hours delay between the initial and terminal points in the transportation of the cattle, it would be necessary to add together the several delays occurring on both the roads. If the damage caused by the delays on the Orient road be added to the damage caused by the delays on the Texas & Pacific road, it would seem to violate the contract that each road should be liable only for the damage occurring on its own line. While the shipment was consigned to Ft. Worth, the contract is stated to be that the Orient road agreed to transport it only to Sweetwater. Under similar conditions, where there was no through contract of shipment, the Supreme Court of this state in Galveston, H. & S. A. Ry. Co. et al. v. Jones, 104 Tex. 92, 134 S. W. 328, said:

"There being in this case no contract for through shipment, the fact that the second company received and transported the cattle is not sufficient to create the joint liability declared by article 331a, and the Court of Civil Appeals erred in so holding. In order to bind the second or subsequent companies jointly with the first, or with any of the other companies, there must be something more than the receiving and transporting the goods or property, because the law required the carrier to so receive and transport such freight when tendered to it."

Where the contract does not obligate appellants to deliver the cattle at a specified time, nor on a special market, the law implies a contract to deliver within a reasonable time. No necessary or reasonable delay would constitute a breach of its duty. G., H. & S. A. Ry. Co. v. Warnken, 12 Tex. Civ. App. 645, 35 S. W. 72.

The damages were assessed on the basis of 23 hours delay. We are of the opinion that the plaintiff's evidence is insufficient to show a delay on the Orient road of time in any way approaching 23 hours, which could have been avoided by the said company; and the evidence is insufficient to show any loss of

time on the Texas & Pacific, that could have been avoided by it, under the law requiring the cattle to be unloaded, watered, and fed. It appears from the evidence that the entire time consumed by the Orient road in transporting the cattle from Ft. Stockton to Sweetwater was about 25 hours and 10 minutes. The schedule time for local freight on that road was shown to be 16.4 miles per hour, and the distance from Ft. Stockton to Sweetwater is 241 miles, showing a loss of time after the loading of the cattle of about 11 hours and 10 minutes. The evidence does not disclose the time when the cattle should have been loaded at Ft. Stockton had the train been on time. Appellee was notified that the cattle would be loaded about eight o'clock p. m. on the 21st. Should we add six hours as unnecessarily lost time in loading the cattle after notice that the cattle would be loaded, and deduct, as we think we must, the 6 hours and 35 minutes time lost by the breaking of the rod in the boiler, we have not exceeded 12 hours that could possibly have been avoided by ordinary care upon the part of the Orient Railway Company. Therefore, the testimony being the same upon another hearing, the Texas & Pacific is not liable for any damages, and the Orient liable, if at all, only for the unavoidable delays upon its road, as above stated, not more than 12 hours. Therefore, the testimony not being conclusive as to the exact time of delay, and the consequent damages, the cause must be reversed and remanded.