GOREE v. UVALDE NAT. BANK.
(No. 6320.)

(Court of Civil Appeals of Texas. San Antonio.
Jan. 21, 1920. On Motion for Re-
hearing, Feb. 19, 1920.)

1. EVIDENCE ⊚⟝135(1) — OF OTHER FRAUDU-
LENT ACTS COMPETENT ON ISSUE OF INTENT.

When the intent with which a fraudulent
act is done becomes material, it is competent
to resort to other fraudulent acts, precisely simi-
lar, to ascertain the real purpose moving the
perpetrator of the wrong, by measuring him by
the standard of his similar frauds connected in
point of time with the transaction under in-
vestigation, systematically indulged in by him
with respect to other parties similarly situated.

2. EVIDENCE ⊚⟝135(1)—TESTIMONY AS TO
FRAUDULENT ENTRIES IN BOOKS BY BANK
CASHIER NOT CONNECTED WITH DEFENDANT
IRRELEVANT.

In a bank's suit on a note, wherein defend-
ant maker did not claim that his signature was
forged, but only that the amount written in by
the bank's cashier, who had full authority from
defendant to fill such blank to cover an over-
draft, was fraudulent, testimony of a witness
that other fraudulent entries, unconnected with
defendant and his note, were found in the books
of the bank, and had been made by the cashier,
held inadmissible as irrelevant.

3. EVIDENCE ⊚⟝317(4)—TESTIMONY NOT FROM
PERSONAL KNOWLEDGE AS TO WHAT BOOKS
OF BANK SHOWED INADMISSIBLE AS HEAR-
SAY.

In a bank's suit on a note given to cover
overdrafts, defendant claiming that the cashier
of the bank had fraudulently filled in the amount
of the note, which had been left blank, testi-
mony of a witness, not from personal knowl-
edge, but as to what the books of the bank pur-
ported to show, as to forgeries and false en-
tries in respect to the accounts of third persons
made by the cashier, held inadmissible as hear-
say.

4. BILLS AND NOTES ⊚⟝502—INDICTMENTS
AGAINST BANK OFFICER FOR FORGERY INAD-
MISSIBLE IN BANK'S ACTION ON NOTE.

In suit by a bank on a note given to cover
overdrafts, defendant's claim being that he had
signed the note in blank, but that the cashier
of the bank had acted fraudulently in filling
in the particular amount, indictments against
such bank cashier for forgery were not admis-
sible at defendant's instance.

5. BILLS AND NOTES ⊚⟝538(5)—SUFFICIENT
CHARGE ON BURDEN OF PROOF, WHERE SIGNA-
TURE IN BLANK IS ADMITTED, BUT FRAUDU-
LENT FILLING IN OF AMOUNT ALLEGED.

In a bank's suit on a note which defendant
maker admitted signing in blank, pleading non
est factum, and seeking to avoid his admission
of signature by pleading a fraudulent filling in
of the amount of the note by the cashier of the
bank, charge that, where the maker denies ex-
ecution under oath, plaintiff has the burden of
proof, but, where the maker admits the signa-
ture in a plea of non est factum, the burden to
prove it was fraudulently filled out is on him
was sufficient.

6. BILLS AND NOTES ⊚⟝492—BURDEN ON MAK-
ER, PLEADING NON EST FACTUM, BUT ADMIT-
TING SIGNATURE, TO SHOW INJURY THROUGH
FRAUDULENT FILLING IN OF AMOUNT.

In a bank's suit on a note admittedly signed
in blank by defendant maker, claiming that
the cashier of the bank had fraudulently filled
in an improper amount, the burden was on de-
fendant, who pleaded non est factum, admitting
the signature of the note, but seeking to avoid
it, to show how he had been injured.

7. TRIAL ⊚⟝205—DUTY OF COURT TO INSTRUCT
ON BURDEN OF PROOF ON REQUEST.

A court which has not instructed on the
burden of proof should do so on request, if nec-
essary for the better aid and guidance of the
jury, though special issues have been framed
for a finding so as to indicate the burden.

8. BILLS AND NOTES ⊚⟝492—BURDEN TO
PROVE NOTE WHEN WANT OF CONSIDERATION
IS DENIED.

When the want of consideration of a note is
denied under oath, the burden to prove the note
is on plaintiff payee.

9. TRIAL ⊚⟝352(1)—ISSUES SUBMITTED IN
SUIT ON NOTE HELD SUFFICIENTLY PLAIN.

In a bank's suit on a note, the larger of
two, claimed to have been signed and delivered
as a renewal of the smaller, defendant maker,
claiming that he had signed the larger note in
blank, and that the cashier of the bank had
fraudulently filled in the amount without au-
thority, the issues submitted whether the larger
note was delivered as a renewal, and whether
it was fraudulently filled out without defendant
maker's authority, were plain and sufficient.

10. TRIAL ⊚⟝350(1)—REFUSAL OF SPECIAL IS-
SUE ON PREPONDERANCE OF EVIDENCE PROP-
ER.

In a bank's suit on a note, where the trial
court had sufficiently defined where the burden
of proof on the issues rested, it did not err in
refusing defendant's requested special issue,
whether the bank had shown by a preponderance
of evidence that the note renewed by that in
suit was executed by defendant or by his au-
thority.

11. BILLS AND NOTES ⊚⟝517—NOTE PROPERLY
SIGNED PRIMA FACIE EVIDENCE OF EXECUTION
AND CONSIDERATION.

A note, properly signed and delivered by a
party, is prima facie evidence of its due execu-
tion, as well as its consideration.

12. BANKS AND BANKING ⊚⟝102—CASHIER,
FILLING IN BLANK NOTES GIVEN TO COVER
OVERDRAFTS, ACTS FOR CUSTOMER AND NOT
FOR BANK.

Where a bank's customer made out blank
notes to cover overdrafts, in filling in such notes
for the amount of the overdrafts the bank's
cashier was agent for the customer, and not
for the bank.

13. BANKS AND BANKING ⊚⟝116(1)—PAYEE
BANK WITHOUT BURDEN TO ESTABLISH AGEN-
CY OF CASHIER TO FILL IN NOTE SIGNED BY
CUSTOMER TO COVER OVERDRAFT.

Where a bank knew the agency its customer
had established for its cashier to fill in a note

⊚⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

signed in blank by the customer to cover overdrafts, in its suit on the note the bank had no burden to establish the relation of agency between the customer and its cashier; the only fact to be established being whether the amount of the note was filled in correctly by the cashier.

## On Motion for Rehearing.

14. BANKS AND BANKING ☞102—ACTS OF CASHIER BEYOND SCOPE OF AUTHORITY NOT BINDING.

The cashier of a bank having large authority is an agent of the bank within the scope of his authority, but when he exceeds it the bank will not be bound.

15. BANKS AND BANKING ☞116(6)—BANK CHARGEABLE WITH INFORMATION OF CASHIER FILLING IN BLANK NOTE TO COVER CUSTOMER'S OVERDRAFTS.

If a bank's cashier exceeded his authority from the bank in writing in a false amount in a blank note given by the bank's customer to cover overdrafts, the customer could defeat the bank's suit on the note for such improper amount, the bank being chargeable through its cashier in preference to the customer, who was not benefited by the dual agency of the cashier for himself and the bank.

Appeal from District Court, Uvalde County; Joseph Jones, Judge.

Action by the Uvalde National Bank against Chas. E. Goree. From judgment for plaintiff, defendant appeals. Affirmed.

Ditzler H. Jones and L. Old, both of Uvalde, for appellant.

Martin & Martin, of Uvalde, for appellee.

COBBS, J. This suit was to recover on a note against appellant for the sum of $3,038, dated November 1, 1918, payable four months after date with 10 per cent. attorney's fees. The bank went into liquidation because of insolvency caused by the alleged defalcations and embezzlements of its cashier, F. J. Rheiner. It was submitted on special issues, and the jury found in favor of appellee, and judgment entered for amount of note sued for in favor of appellant. The appellant defended by presenting general demurrer, general denial, plea of non est factum, and want of consideration.

The main issues grow out of the fact that because appellant was a customer of said bank having its domicile in Uvalde and residing in Sabinal it was inconvenient for him to arrange payments of or execute notes to protect overdrafts as they in the course of his business occurred from time to time. Therefore, at the suggestion of F. J. Rheiner, the cashier of said bank, appellant received from him a number of the blank checks of the bank with the understanding as appellant received notices of overdrafts he would sign blank note and mail to Rheiner, who was authorized for him to fill in the amount and hold in the bank until it could be arranged either by payment or renewal notes. This arrangement went along for a while, until the bank refused to carry appellant any further, and required security, which he gave, with his father, in a note for $8,946.82, which appellant claims embraces all his indebtedness to the bank at the time. At that time, appellant insisted upon a statement from the bank showing his indebtedness and the outstanding notes, which he never received to his satisfaction, nor was he shown all the notes signed by him, the amounts of which were intended to be embraced in the said big note. He never denied his signature to his notes, but denied the amount written on note sued on and also denied the authority to fill in the amount of renewal note; the authority being limited to overdrafts.

The real issue in the case was about the two notes held by the bank. One was for $2,940, and the note sued on for $3,038, the appellant denying in toto, and the appellee affirming, that the $3,038 was the renewal of the former note.

The said Rheiner having absconded, and there being a sharp issue of fact between the parties as to the validity of the note sued on, appellant sought to make proof of various false entries and forgeries in the books and accounts of other parties in no way connected with defendant's account, which the court would not permit, to which ruling of the court the appellant excepted.

[1-3] The appellant's first assignment is:

"The court erred in sustaining the objections made by the plaintiff to questions seeking to elicit from the witness Jake Schwartz testimony to the effect that since the Uvalde National Bank closed, which was on January 8, 1919, that he had been working at said bank, in connection with one Smith, who was a United States Department of Justice man, an expert accountant, and that they found quite a large number of false entries and forgeries of various people, which said number of false entries and forgeries amounted to 1,018, which were placed on the books and records of the bank, but the court sustained the objections of the plaintiff that the same was irrelevant and immaterial and could serve no purpose in the case, all of which more fully appears by reference to defendant's bill of exception No. 22."

Appellant's first proposition is to the effect: In an action by and between the parties, where the act complained of is fraudulently done, it is permissible to show other similar fraudulent acts done by the party about the same time, as bearing on the question of intent with which the party did the act by which it is sought to hold the defendant liable, similar in its nature.

The bill of exception, though quite voluminous, we copy parts thereof as follows:

"That at the beginning of the trial it was agreed that, on account of the books, ledgers,

records, and accounts of the plaintiff bank covering so many pages and being so voluminous, the witnesses should be permitted to state in a shorthand rendition of the facts what the books showed, and that the plaintiff in the case placed as a witness in their behalf Jake Schwartz on the stand, and on cross-examination he was called on to produce the said books of the bank, together with the ledgers, accounts, records of the transaction of the said bank, of which he then and there had custody of as liquidating agent of the bank, which had closed its doors on January 8, 1919, and was called on to exhibit the said books, etc., all of which said request the said witness complied with, for the purpose of showing forgeries and false entries thereon made by F. J. Rheiner during the time that he was cashier of the plaintiff bank, and particularly during the time covering the years of 1917 and 1918, with reference to the accounts of others than that of the defendant C. E. Goree.

"By the said witness of the plaintiff the defendant would, after having gone through defendant's account fully, and having gone over and through the said books, etc., in the presence of the jury, and the said plaintiff's witness Jake Schwartz would have pointed out and have shown the jury on the said books, etc., false entries and forgeries in the accounts of other parties, in no way connected with the defendant's account, to the number of 1,018, practically all of which, about 900, would have been shown by and appeared on said books to have been made during the latter part of the year of 1917, and down to the 31st day of December, 1918, which said false entries as shown would have been false and fraudulent entries in the accounts of W. B. Patterson, J. N. Garner, Ford Moore, Ben Moore, John Laxson, John Turman, Pete Walcott, A. M. Sanders, T. J. Martin, H. G. Martin, Daniel Holmes, G. R. Patterson, W. W. Petraeus, Margie Petraeus, Mrs. J. F. Ward, G. N. Gibbons, O. C. Davenport, John Gibbens, Gibbens & Davenport, Sam Blalock and approximately 50 others, who were patrons of the bank during the said period, and who had accounts with the said bank, and that the said books, papers, records, etc., would have shown forgeries committed by said F. J. Rheiner, while in position of cashier of said bank, during said period, by signing notes payable to said bank, and checks thereon, by falsely and fraudulently and without authority signing the names of Ford Moore, John Laxson, T. J. Martin, W. B. Patterson, Gibbens & Davenport, G. N. Gibbens, M. M. McFarland and about 25 other patrons of the said bank during the said period, and upon the court sustaining the said objections of the plaintiff thereto, the defendant then excepted and offered to pursue the inquiry further by cross-examination of the said witness Jake Schwartz, and, if permitted, would have shown and proven by the said Jake Schwartz and he would have testified that when the bank closed, which was January 8, 1919, he was appointed by the proper authorities to the position of liquidating agent of the said bank, and that day he went into immediate possession and control of the books of the said bank, and that he had had eight years' experience in bookkeeping, and is an expert accountant and bookkeeper, and that in a week after he took charge the United States Banking Department sent an expert accountant and auditor, to wit, W. J.

Smith, to examine said books, records, etc., of said bank with the assistance of said witness Jake Schwartz, for the purpose of ascertaining and ferreting out what false entries and forgeries had been made on the books, records, papers, etc. of said bank, and that he, the said Jake Schwartz, and the said expert accountant, did make a thorough examination and auditing of said books, records, papers, etc., of said bank, and that they found 1,018 false and fraudulent forgeries and entries on such books, records, etc., of said bank made by the said F. J. Rheiner during the time that he was cashier thereof, and of which about 900 were made by him in the latter part of 1917 and the year 1918, down to December 31, 1918, on the accounts of the same persons and patrons above named of the said bank, and approximately 50 others, and that they found forgeries of the names of the persons above mentioned, and approximately 25 others. But on the objections above stated all of the said testimony was excluded, and the court announced that he would not permit any evidence of any other false entry, forgery or other act of the said F. J. Rheiner to be introduced in evidence other than those relating to the defendant's account."

It was shown by Jake Schwartz, a witness for appellee and in charge of liquidating the bank, that the original entry of $2,940 note was the only one that appeared on the account of appellant on the liability ledger that was in the handwriting of the cashier, F. J. Rheiner, the balance of them being in the handwriting of the bookkeepers, Nunn and Kelso.

The statement of the list of all notes which appellant owed the bank, rendered him July, 1918, by Rheiner in Rheiner's handwriting, did not contain the item of note for $2,940, though purported to be dated November, 1917, and past due July, 1918, at time list was made.

The note for $8,946.82, dated October 2, 1918, signed by his father, was contemplated to embrace all past-due notes, but it seems the list did not include the note dated in November, 1917, maturing July, 1918, for $2,940, the disputed note.

In discussing this assignment, it must be borne in mind that appellant does not deny his signature to this note. There is no pretense that it was forged; only claimed the amount written in is fraudulent. Rheiner was authorized and had full and ample power to fill in the blank spaces left for the amounts due for overdrafts. There seems to be no similarity in the proof offered as to the misconduct of Rheiner in reference to his dealings with appellant in respect to his conduct with others. Here he was trusted by appellant with a note left in blank to have a certain amount written therein. The bank nor any one else disputes those facts testified to by appellant. If the amount of note written in the book corresponds with amount of note, and he has made other false entries as to other amounts, would that tend to prove the

amount written in note itself was false, when he was authorized to write some amount?

The object of this testimony it seems was to show that Rheiner systematically made fraudulent entries in the accounts of various customers of the bank, imposing improperly, by fraud, liabilities on them, presumably to hide his own fraud and embezzlement by a system thus inaugurated and followed, as throwing light on his conduct to show fraud in this transaction. Here the controversy is upon notes signed by appellant.

The objection of appellant went further to the testimony offered than as to whether such proof properly presented might be admitted, and the objection was:

"Said testimony as to what the books showed in refenerce to other accounts, in no way connected with the defendant's account, because the same was irrelevant and immaterial and could serve no purpose in the case, or throw any light on the issues involved, and, further, that such matters would not show system on the part of said F. J. Rheiner, and that said entries, books, ledgers, papers, and records of said bank were voluminous and lengthy, and it would be an unreasonable consumption of time to go through same, and would be only the opinion and conclusion of the witness, based on hearsay of extraneous matters all of which said objections were thereupon sustained by the court, to which the defendant then and there excepted, and then defendant offered to examine said witness of the plaintiff, Jake Schwartz, further on the subject, and show by him that he was familiar with the said books, etc., and that he knew what they showed and contained, and then show what same showed in reference to false entries and forgeries on such records, books, papers, etc., in reference to the accounts of others than the defendant and in no way connected with his account, to which the plaintiff again objected that the same was irrelevant and immaterial and would throw no light on the issues in the case, and did not tend to prove system on the part of the said F. J. Rheiner and would be his opinion based on hearsay, in no way connected with the defendant, which said objections were again sustained by the court, and the evidence was excluded and not permitted to go before the jury."

In support of the contention of appellant, he cites and mostly relies upon the case of Compagnie Des Metaux Unital v. Victoria Manufacturing Co., 107 S. W. 653. The facts in the case showed, from the depositions of about 11 witnesses who had dealings with Stern, the agent, in purchasing he substituted the word "feet" for "inches" in order to enlarge the sale. For instance, in the cited case the issue was as to whether the order was for bars of steel sold to appellee from 12 to 18 inches and the costs to be from $40 to $60, while Stern, appellant's agent, claims they were to be from 12 to 18 feet in length, and to cost 39 cents per pound delivered. In every case the bars, when received, were from 12 to 18 feet, and nearly all the witnesses testified the bars were to be much shorter, and entire bill would not exceed $60, and in every case the purchase was for bars from 12 to 18 inches and not feet. In discussing this case, supra, the court said:

"When the shipment arrived, it was at least five times what the purchaser thought he had ordered. The objections to this testimony were directed to all of it collectively; the reasons urged being 'that it was irrelevant and immaterial, and thrust new issues in the case, and because it did not show a fraudulent system pursued by Stern.' When the intent with which an act is done becomes material, it is competent to resort to other acts of the party whose conduct is brought in question, in order to ascertain his real purpose in the case being considered; but such acts must be those of a similar kind, and so connected with the transaction under consideration in point of time as that they all may be regarded as parts of a system. Raby v. Frank, 12 Tex. Civ. App. 125, 34 S. W. 777; Dwyer v. Bassett, 1 Tex. Civ. App. 513, 21 S. W. 621; Bank v. Wisdom's Ex'rs, 111 Ky. 135, 63 S. W. 461; Bradner on Evidence, 14; 6 Ency. Evidence, 33–38, and cases cited. It is not essential to the admissibility of this class of evidence that each of the other transactions offered should, within itself, furnish conclusive evidence of a fraudulent intent in its performance; but it is sufficient if each is shown to be parts of a systematic course of dealing, which, when considered in its entirety, tend to furnish evidence of a fraudulent intent. As error occurring in one transaction alone might justly be attributed to inadvertence or an honest mistake, while if the same error, or one substantially the same, should occur in a series of transactions of a similar kind, this would probably furnish sufficient evidence of fraud. We think there was no error in the admission of the testimony."

Allowing testimony of this nature in a proper case is rather dangerous, and to be controlled by the greatest care by the trial judge, and confined to cases of fraud of like character and similar nature to the case that may be under investigation, a systematic scheme of fraud and peculation that would tend in a controversy involving similar frauds, so that the wrongdoer might be weighed in the scales, as one who being in the habit of practicing just such intended frauds, the jury might, under all the circumstances, turn the balance against him. But we do not believe the testimony offered by the witness Schwartz was admissible for any purpose. Aside from tending to establish any probative fact, his testimony would not only have been incompetent and immaterial, but would have been hearsay. The best testimony of the facts susceptible of proof was not set out as tendered in the bill of exceptions; if admissible for any purpose, could not have been proven in the manner alleged. It did not tend to prove the fraudulent intent and practices in cases like this. Kingsbury v. Bank, 30 Tex. Civ. App. 387, 70 S. W. 553; Levy v. Lee, 13 Tex. Civ. App. 510, 36 S. W. 309; Ettlinger et al. v. Kahn, 134 Mo. 492, 36 S. W.

37. But here it is not denied that the note was signed by appellant. It is not denied that Rheiner had authority to fill in the amounts of overdrafts. It was not denied that Rheiner made the entry, and that entry corresponded with the face of the note. The testimony offered was embraced in another scheme of fraud, wholly disconnected with this, for if amount in note was correct, the entry itself was correct. There was testimony of at least three witnesses, stating that when appellant came to the bank before the suit was brought to investigate concerning the two notes, the one sued upon for $3,038 and the other for $2,940, he admitted his liability, or rather that this $3,038 was a renewal, embracing therein the former $2,940. This was denied by him.

Of course when the intent with which an act is done becomes material, it is competent to resort to other fraudulent acts, precisely similar, to ascertain the real purpose and intent moving the perpetrator of the wrong by measuring him by the standard of his similar frauds connected with the transaction in point of time under investigation systematically indulged in by him in respect to other parties similarly situated. Then the scienter and motive are involved, and a series of similar acts of the defendant charged with fraudulent purposes and his wicked intent and fraudulent practices often indulged in become subjects of inquiry. Raby v. Frank, 12 Tex. Civ. App. 125, 34 S. W. 777; Dwyer v. Bassett, 1 Tex. Civ. App. 513, 21 S. W. 621; Quanah Ry. Co. v. Bone, 208 S. W. 709; Day v. Stone, 59 Tex. 612; Hunter v. Lanius, 82 Tex. 684, 18 S. W. 201; Cook v. Greenberg, 34 S. W. 688; Posey v. Hanson, 196 S. W. 731; M., K. & T. Ry. Co. v. Killett, 168 S. W. 979; Citizens' Bank v. Slaton, 189 S. W. 742; Quarles v. Hardin, 197 S. W. 1112.

The bill of exception shows an offer to prove by the witness Jake Schwartz, not from any personal knowledge of the matters himself, but what the books purported to show as to forgeries and false entries in respect to various accounts of others made in the books of the bank by F. J. Rheiner during the time he was cashier, covering the years 1917 and 1918. While the names of such other persons were mentioned in the bill, none of them were tendered as witnesses in court to prove any of the alleged facts, though at the end of the bill it is recited the court "would not permit any evidence of any other false entry, forgery, or other act of the said F. J. Rheiner to be introduced in evidence other than those relating to the defendant's account," but no tender of such other proposed proof was made. We cannot go outside of the bill, aside from the fact that such proof as tendered in the bill itself was objectionable on the ground of being hearsay. It is not pretended that the persons named had similar transactions with those under investigation. There was no case tendered showing signed notes by other customers, delivered to and authorizing the cashier to fill in the amounts due, as in this case. There is no similarity in the several transactions at all. Fraud wholly disconnected and in no sense embraced in a plan or scheme to defraud is no more admissible to establish the alleged fraud than it would be to prove by general reputation his character for dishonest dealings generally with others.

We cannot give our assent to appellant's proposition, where an issue is made involving fraud, any act of the party showing motive or intent is admissible, or, where forgery is pleaded, any act happening about the same time is a circumstance to go to the jury to be weighed by them as any other circumstance. That would be a dangerous doctrine. To admit such testimony, much more is required to be shown to make it admissible.

[4] In the second assignment appellant complains that the court erred in refusing to permit appellant to introduce the indictments against F. J. Rheiner for forgery. This cannot be sustained. Such evidence was immaterial and irrelevant, and would have been highly prejudicial. It was not the way to establish guilt. It would not prove that he had forged. There must have been better evidence of the fact. It would not have established, or tended to establish, the fact that he had written in the note left with him to fill in the wrong amount, or that he forged them at all. If such testimony be admissible as impeaching testimony, Rheiner had not testified in the case to lay the predicate.

[5, 6] Appellant's third assignment of error, complaining of the court's refusing to give his seventeenth special issue charge, is, to wit:

"Defendant having filed a plea of non est factum to the $2,940 note, and not having in his pleadings admitted the execution of same, I charge you that the burden of proof is on the plaintiff throughout to prove its execution by the defendant."

The propositions thereunder are that when a plea of non est factum is imposed, it is the duty of the court to give a special charge on the burden of proof; and, secondly, when plea of non est factum is made to both notes, burden should also be charged as to execution of first note.

The court charged the jury on the subject in his general charge:

"Where the defendant, under oath, denies the execution of a note, the plaintiff has the burden of proof; but, where the defendant admits the signature to a note sued on in a plea of non est factum, the burden of proving that it was fraudulently filled out over his signature rests on him."

We think this sufficiently charges on the burden of proof. Jackson v. Graham, 205 S. W. 757.

Again the court submitted to the jury the special issue as to the execution of the note by appellant, and the jury found he did execute it. There was proof that he admitted giving the note for $2,940 renewed in the note for $3,080.

The jury could not have mistaken the instruction as to where the burden of proof rested. The burden was on appellant to show how he was injured. When the defendant under oath denies the execution of a note, the burden of proof is on the plaintiff to establish its execution. But when in the plea of non est factum the signature of the note is admitted, but sought to be avoided by the plea that the amount filled in is different in amount from the true amount authorized to be filled in the blanks left for the true amount when ascertained, the burden of proof is shifted to the party to show he has been injured, as well as the error committed by the court in the refusal. As said by Judge Gaines in Newton v. Newton, 77 Tex. 508, 14 S. W. 157:

"Such a plea was interposed in this case, and appellants now contend that the court erred in refusing to charge the jury that the burden was upon the plaintiff to prove that there was a valuable consideration for the note. The note imported a consideration, and the burden was upon the defendants to show that there was none. The effect of the sworn plea was not to shift the burden of proof, but merely to put the consideration in issue. It is also complained that the court erred in charging upon a failure of consideration. If there was originally a valuable consideration to support the note, it could not be defeated by parol proof that the father agreed at the time it was executed to demand payment only in the event it was necessary for his maintenance and support. This would be to vary a written contract by parol evidence. The issue in the case was whether or not there was a want of consideration for the note, and it was error to charge upon a failure of consideration. This, however, it seems to us, was not prejudicial to appellants."

[7] Special issues given or refused are not always controlled by rules applicable to special charges. Such special issues frequently are so framed for a finding as to indicate the burden, or, in other words, the direction to find so specific as to need no instruction as to how to find. However, when the court has not instructed on the burden of proof, the court should, when requested to do so, if necessary for the better aid and guidance of the jury. Iowa City Bank v. Milford, 200 S. W. 883; Polk v. Inman, 211 S. W. 261; Lanham v. West, 209 S. W. 258; G., H. & S. A. Ry. Co. v. Cook, 214 S. W. 540; Kansas City v. Odom, 185 S. W. 626; Davis v. Davis, 20 Tex. Civ. App. 310, 49 S. W. 728; City of Victoria v. Victoria County, 115 S. W. 68.

[8] The court in its general instruction charged the jury when the want of consideration of a note is denied under oath the burden of proving the note is on plaintiff. Taylor, B. & H. Ry. Co. v. Taylor, 79 Tex. 104, 14 S. W. 918, 23 Am. St. Rep 316. This is a correct proposition of law, and needs no further amplification.

[9] The court submitted to the jury, Did appellant execute the note for a consideration? and they said he did. Was note for $3,038 delivered to bank as a renewal of the $2,940 note? and they said it was, and further answered the court in reply to appellee's special issue No. 1, given, that note $3,038 was not fraudulently filled out, without appellant's authority over his signature. The issues submitted were plain, and could not have been misunderstood by the jury, and they covered all the questions in the case very clearly, and are sufficient. N. A. A. Ins. Co. v. Miller, 193 S. W. 759.

[10] Appellant complains in fourth assignment that the court erred in refusing to give his special charge:

"Has the plaintiff in this case shown by a preponderance of evidence that the $2,940 mentioned in the pleadings and evidence was executed by the defendant in this case, or by his authority? Answer Yes or No."

In a proper case the court should instruct the jury on the preponderance of evidence, but hardly for them to ascertain if there was a preponderance of evidence. Anyway, the refusal of such a charge here is not error, for the court has sufficiently defined to the jury where rests the burden of proof on the issues presented in the case.

[11-13] The fifth assignment is to same effect, and overruled, and the sixth is to the effect that the jury are instructed to ascertain if the plaintiff has shown by a preponderance of evidence that the note sued on was filled in, in the sum of $3,038, with authority of appellant as it is written. The proposition thereunder is:

"Where a party gives another party the right to sign his note, and places a limitation on this authority, all parties interested must take notice of the limitation of authority."

Appellant gave notes to Rheiner, which he signed, to take up his overdrafts. He gave five or six of such blank notes. Appellant places great reliance upon the case of Connor v. Uvalde National Bank, 156 S. W. 1092, decided by this court, to sustain his contention on the point. That case is, if anything, authority against appellant. Besides, the facts are not similar, except in the Connor Case there was authority given to sign his name as surety on a renewal note. He was already surety on first note, but no general authority to sign notes given. A note was signed, including interest, making him joint and principal obligor with others in which no authority to do so was given, and defendant denied its execution by a sworn plea of

non est factum. The bank took the position the authority given carried with it the right to sign any note payable to it. The court very properly held the burden of proof was on the plaintiff to show authority to sign the particular note and the extent of authority.

Here the question is very different. Appellant in this case signs the note himself. A note properly signed and delivered by a party is prima facie evidence of its execution as well as its consideration. A note, properly signed and delivered, carries with it verity, and no question of limitation of its execution arises. The consideration may be attacked, as, was done here, and its true amount questioned, as done here.

This case resolved itself finally down to the issue as to whether the true amount that appellant owed the bank as disclosed by the note was correct. He did not deny his signature. He did not deny he gave the authority to fill in the blank space in the note, but that the true amount was not placed therein.

In the Connor Case, Seawell was only authorized to sign Connor's name to a renewal note as surety for the principal amount of the note. Connor was on the first note already as surety, and Seawell represented to him all interest was paid before consent was given him to sign. When the note was signed, interest was included in it, and it was made a joint and several note, binding him as principal with others. There was only special authority to do one thing. In this case under discussion the cashier of the bank was made the agent of appellant generally to fill amounts in that he overdrew from the bank from time to time. It cannot be contended under the facts the cashier was the agent for the bank in the transaction. He was doing this as the agent of and for the accommodation of appellant. See Hilliard, v. Lyons, 180 Fed. 685, 103 C. C. A. 651, in which case is cited case of Terrell v. Bank, 12 Ala. 502, which latter case is where "a note was executed in blank and delivered by the maker to the director of a bank, to be filled in for a certain sum and used in renewal of one that had been already discounted. The director, however, filled out the note for a larger sum, and had it discounted for his own benefit, and appropriated the proceeds, and it was held that this could not be set up by the maker of the note to avoid responsibility on it." The court say:

"It cannot be admitted * * * that in receiving the blank of the defendant to be used for his own benefit, Scott (the director) acted as agent of the bank; and certainly he did not thus act in abusing the authority conferred on him by the defendant."

When Rheiner was given by Goree said blank note to fill, only to meet overdrafts, he (Rheiner) was the agent of Goree, and when he used the blank for another purpose (as is contended for by appellant) he was still the agent of appellant, and not appellee, and the theory and doctrine of limited authority does enter into the question, to affect the rights of the appellee in this case.

If the bank was charged with any knowledge, it would have known these notes were signed by appellant, in which were to be written the true amount. Here the only fact to be established was whether the amount was written correctly therein. Here let us say the bank knew the agency the appellant had established for Rheiner to fill in the note. That fact, then, was established, and no burden was cast on the bank to establish that agency that parties dealing with agents must establish. As was said in the Connor Case:

"Whether the assumed agent be general or special," persons "are bound, at their peril, to ascertain, not only the fact of the agency, but the extent of his authority; and, in case either is controverted, the burden of proof is upon them to establish it."

In the Connor Case the court instructed a general verdict. In this case matters were submitted to a jury to ascertain the facts, and upon all the evidence found all the facts against appellant.

There are 17 assignments of error, and each in various ways and forms presents substantially the same questions as those we have discussed, and to discuss them further would be to discuss practically over and over again the same questions. We find no reversible error assigned, and they are overruled.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant very earnestly urges us to reconsider our opinion, and to examine authorities not heretofore presented by him. We have done that, and briefly give our reasons for overruling it. All the issues in this case were plainly and correctly submitted by special charges, which the jury answered in favor of appellee.

There is complaint again urged that the trial court erred in refusing to give the appellant's special charge No. 3, requested, to the effect, Has plaintiff shown by the preponderance of evidence that the $2,940.00 mentioned was executed by defendant or by his authority?

We say this charge had been sufficiently given, and it was. The appellant labors under very great misapprehension in saying that we hold a jury should not be instructed that the plaintiff is required to establish his case by the preponderance of evidence. No such charge is requested or refused. The books of the bank showed the entry of the note of $2,940, against appellant. Appellant's own testimony showed Rheiner was authorized to fill in the amounts. There was testimony showing Rheiner admitted his liability, in that the $3,038 note sued on was

a renewal of the former $2,940, and this testimony supported the findings of the jury.

[14] It is true the cashier of a bank having large authority is an agent of the bank within the scope of his authority. But when he exceeds them, the bank will not be bound. Ledgerwood v. Dashiell, 177 S. W. 1012.

[15] If 'Rheiner exceeded his authority in writing in a false amount in the note, appellant could defeat the improper amount, because the bank, through him, would have all the information Rheiner would have of the matter.

While, as stated, Rheiner would as a matter of law be the agent of the bank to do its lawful acts, he was not the agent of the bank empowered to fill in amounts in appellant's notes. But his dual capacity would bring home to the bank knowledge of everything he knew. Now this dual capacity does not protect the appellant. It is well established that "He who trusts most must lose most," and a case can hardly be found where there was more trust placed than was placed in the agent. But how does this dual agency or capacity benefit appellant? The issue was directly submitted as to whether or not he owed the $2,940, and whether it was embraced in the $3,038, and the jury found against him. As there was proof to support the findings, we do not feel authorized to set them aside.

The motion for a rehearing is overruled.